GREAT SOUTHWEST FIRE INSURANCE COMPANY, Plaintiff-Appellee, v. DARRELL GREENLEE *et al.*, Defendants-Appellants.

First District (2nd Division)   No. 84—0936

Opinion filed June 28, 1985.

William J. Sneckenberg and Benjamin E. Alba, both of William J. Sneckenberg & Associates, Ltd., of Chicago, for appellants.

Gregory E. Rogus, of LeRoy A. Garr & Associates, Ltd., of Chicago, for appellee.

JUSTICE BILANDIC delivered the opinion of the court:

Plaintiff-appellee Great Southwest Fire Insurance Company (hereinafter Great Southwest) brought a declaratory judgment action to adjudicate its obligation to defend and indemnify the defendants-appellants, Darrell and Rosina Greenlee, under a general liability policy. The Greenlees are defendants in a suit brought by the buyer of grain storage bins that collapsed after construction. (Tabor Grain Co. v. Chicago Eastern Corp., No. 79 L 25225 (Ill. Cir. Ct. May 7, 1980).) Great Southwest moved for summary judgment, which was granted.

On appeal, we vacated the judgment and remanded for further findings because the record was insufficient to show whether defendants had a "reasonable expectation" to expect coverage under the policy. (*Great Southwest Fire Insurance Co. v. Greenlee* (1982), 108 Ill. App. 3d 1205 (Rule 23 order).) On remand, depositions of the Greenlees and their insurance agent, James Pumo, were taken. Based on the evidence in the depositions, plaintiff again moved for summary judgment, which was granted. On appeal, defendants argue that the policy's completed operations and product hazards exclusions do not apply and that their reasonable expectation should determine whether the provisions of the policy are ambiguous so that they must be construed in the insureds' favor. For the following reasons, we affirm.

Defendants were sued by the Tabor Grain Company in a complaint that alleged strict liability in tort, negligence, and breach of express and implied warranties in the construction of a grain storage bin. The complaint alleged that Chicago Eastern Corporation was in the business of designing and making bins and their foundation materials; that the defendants were in the business of constructing and installing bins; and that on September 17, 1978, the foundation materials fractured and the storage bins collapsed, "causing extensive damage to and destruction of the aforementioned bins and other property of the plaintiff." Tabor Grain sought $379,197.22 in damages.

During that time, defendants Greenlees had an insurance policy in effect that covered the period in question. The policy was entitled "Manufacturers' and Contractors' Liability," and included liability coverage for bodily injury and property damage, followed on the next page by a list of exclusions. The exclusions at issue are:

"Exclusions

This insurance does not apply:

(a) to liability assumed by the insured under any contract

or agreement except an incidental contract; but with respect to bodily injury or property damage occurring while work performed by the named insured is in progress, this exclusion does not apply to a warranty that such work will be done in a workmanlike manner;

\* \* \*

(n) to property damage to the named insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith;

(p) to bodily injury or property damage included within the completed operations hazard or the products hazard;

\* \* \* ."

Definitions follow on pages 14 and 15 of the policy:

"Definitions

When used in this policy (including endorsements forming a part thereof):

'completed operations hazard' includes bodily injury and property damage arising out of the operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs after such operations have been completed or abandoned and occurs away from the premises owned by or rented to the named insured. 'Operations' includes materials, parts or equipment furnished in connection therewith. Operations shall be deemed completed at the earliest of the following times:

(1) When all operations to be performed by or on behalf of the named insured under the contract have been completed,

(2) When all operations to be performed \* \* \* at the site of the operations have been completed, or

(3) When the portion of the work out of which the injury or damage arises has been put to its intended use by any person or organization other than another contractor or subcontractor engaged in performing operations for a principal as a part of the same subject.

Operations which may require further service or maintenance work, or correction, repair or replacement because of any defect or deficiency, but which are otherwise complete, shall be

deemed completed. The completed operations hazard does not include bodily injury or property damage arising out of:

(a) Operations in connection with transportation of property, unless the bodily injury or property damage arises out of a condition in or on a vehicle created by the loading or unloading thereof,

(b) The existence of tools, uninstalled equipment or abandoned or unused materials, or

(c) Operations for which the classifications stated in the policy or in the company's manual specified 'including completed operation.' "

On the next page, the final applicable definition is included:

" 'products hazard' includes bodily injury and property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only if the bodily injury or property damage occurs away from the premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others."

The depositions of the defendants showed that Darrell Greenlee requested that James Pumo, an insurance broker, procure enough insurance for Greenlee to do business in Illinois. Greenlee did not explain specifically the type of coverage that he wanted, and Pumo never explained to Greenlee what coverage the policy included. Greenlee read only the first page of the policy.

Pumo stated that the Greenlees never asked him to suggest a particular type of coverage and that he did nothing more than to show the defendants the policy and explain the declarations page. Based on the depositions, the plaintiff moved for summary judgment, which was granted, and defendants filed this timely appeal.

I

■ The standard for summary judgment is set forth in the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005). It states that a judgment can be rendered "without delay if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Ill. Rev. Stat. 1983, ch. 110, par. 2—1005(c).) In determining whether a genuine issue of fact exists, the court must strictly construe the evidence against the movant. *Johnson v. St. Bernard Hospital* (1979), 79 Ill. App. 3d 709, 714, 399 N.E.2d 198, *appeal*

*denied* (1980), 79 Ill. 2d 631.

■ Defendants argue that the exclusions do not apply to the facts alleged in the *Tabor* complaint. Since the briefs were filed, however, our supreme court decided *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, which is dispositive of the issue.

In *Brochu*, an insurance company brought a declaratory judgment action to determine its liability in defending a suit brought by Richard and Marita Brochu against Mark III Development Company (Mark III). The Brochus sought recovery for property damage to their house, built by Mark III, after the house began sinking into the ground as the ground settled. Mark III's insurance policy provided that:

" 'This insurance does not apply:

(a) to liability assumed by the insured under any contract or agreement except an incidental contract; *but this exclusion does not apply to a warranty of fitness or quality of the named insured's products or a warranty that work performed by or on behalf of the named insured will be done in a workmanlike manner*;

\* \* \*

(n) to property damage to the named insured's products or any part of such products;

\* \* \*

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith.' " (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 494.)

Exclusions (n) and (o) above are identical to exclusions (n) and (o) in the present case. Exclusion (a), above, expressly excludes an implied warranty of fitness unlike exclusion (a) here, but both exclude an implied warranty that work will be done in a workmanlike manner.

Both the Brochus and Mark III argued that the policy covered the property damage claim because the claim was within the exception to exclusion (a) and because exclusion (a) conflicted with exclusions (n) and (o), making the policy ambiguous. Accordingly, they asked that the policy be construed in their favor. 105 Ill. 2d 486, 494-95.

The supreme court rejected these arguments. It ruled that the exclusions applied and that the policy did not cover the property damage claim. The court cited with approval *Qualls v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 831, 462 N.E.2d 1288, in

which the court upheld identical exclusions in a suit brought against a carpenter for allegedly defective construction. The court's analysis complied with that of the majority of jurisdictions. (*Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 496-97.) The court concluded that, "[i]n short, 'the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident.' " *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 498, quoting *Weedo v. Stone-E-Brick, Inc.* (1979), 81 N.J. 233, 249, 405 A.2d 788, 796.

In the present case, the collapse of the grain-storage bin is similar to the damage to the house when the ground settled. Both complaints sought recovery for property damage, *i.e.*, damage to the property itself rather than damage resulting from an accident caused by the bin or the house. Thus, we hold that the *Brochu* case is controlling and that the exclusions apply to the policy.

## II

■ Defendants also allege that the policy is ambiguous and that they had a reasonable expectation that they were covered under the policy for an accident like that alleged in the *Tabor Grain Co.* suit. They argue that the reasonable expectation rule should be adopted in Illinois.

In its second motion for summary judgment, Great Southwest relied primarily on the depositions of Darrell Greenlee and James Pumo to assert "that there was no factual basis provided by any agent *** upon which the defendants could base an objectively reasonable belief that they had complete operations coverage and/or products coverage despite the clear language of their policy excluding such coverage." The court granted the motion, although it made no findings.

In support of the court's ruling, Great Southwest relies on the fact that Darrell Greenlee read only the first page of the policy to support its position that there could be no reasonable reliance. Plaintiff also relies on the fact that Pumo was not its agent and that it was not bound by any representations made by Pumo to the Greenlees.

Pumo's deposition shows that he and Greenlee have done business since about 1963. Greenlee testified that he told Pumo that he "wanted enough insurance [so] that I'd be legal to do construction in Illinois." Pumo told him that he would have personal liability and property damage liability insurance, which Greenlee interpreted to mean that "I would have liability insurance to cover me against any

liability that would come against me." Also, Pumo was aware of the type of business that Greenlee did because he testified that Greenlee was in the "Millwright elevator or erection business." Greenlee read only the first page of the policy, and he did not remember whether Pumo suggested any other type of insurance. Furthermore, he relied on Pumo to secure the insurance coverage that was best for him.

Pumo testified that he was a broker rather than an agent of the plaintiff and that he placed orders for Great Southwest through Markel, Incorporated, Great Southwest's agent in Chicago. Pumo could not remember whether Greenlee had refused any other type of coverage, like completed operations and products hazard.

It was on these facts that the trial court granted Great Southwest's motion for summary judgment. Defendants argue that their reasonable expectation should be used in determining whether the provisions of the policy are ambiguous. This argument was addressed recently in *Insurance Company of North America v. Adkisson* (1984), 121 Ill. App. 3d 224, 459 N.E.2d 310. After reviewing the reasonable expectation doctrine, the court noted that it is a rule of construction to be used when an insurance policy's provisions are ambiguous. (121 Ill. App. 3d 224, 228-29.) Because the supreme court in *Western Casualty & Surety Co. v. Brochu* (1985), 105 Ill. 2d 486, 496-98, ruled that identical exclusions were not ambiguous, there is no reason to adopt the reasonable expectation rule as one of construction here.

■ Lastly, the record does not support the defendants' assertion that Pumo was an agent of Great Southwest. Pumo did not have an agency relationship with the plaintiff nor a power of attorney. Moreover, Pumo never held himself out as an agent of Great Southwest, and he never dealt with any officer or employee of plaintiff's. As our supreme court has stated: "The rule is that an insurance broker, like any other broker, is the agent of the person who employs him. If an insurance broker is engaged to purchase insurance covering property of the one employing him, he becomes the agent of the insured and not the insurer." *France v. Citizens Casualty Co.* (1948), 400 Ill. 55, 58, 79 N.E.2d 28.

For the reasons stated herein, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

STAMOS, P.J., and PERLIN, J., concur.