HOME INDEMNITY COMPANY, Plaintiff and Counterdefendant-Appellee, v. WIL-FREDS, INC., Defendant and Counterplaintiff-Appellant (Skidmore, Owings and Merrill *et al.*, Defendants).

Second District   No. 2—91—1389

Opinion filed September 25, 1992.—Rehearing denied November 13, 1992.

Michael Resis, Ellen L. Karecki, and Paul T. Lively, all of Querrey & Harrow, Ltd., of Chicago (Victor J. Piekarski, of counsel), for appellant.

Lloyd E. Williams, Jr., Barry L. Kroll, and J. Ellen Hicks, all of Williams & Montgomery, Ltd., of Chicago (James K. Horstman, of counsel), and Roger K. O'Reilly and Thomas J. Long, both of O'Reilly, Cunningham, Norton & Mancini, and Dale W. Bruckner, of Peregrine, Stime, Newman, Ritzman & Bruckner, Ltd., both of Wheaton, for appellee.

JUSTICE DOYLE delivered the opinion of the court:

Plaintiff, Home Indemnity Company (Home), brought an action for declaratory judgment in the circuit court of Du Page County seeking a determination as to whether it was obligated to defend or indemnify defendant, Wil-Freds, Inc. (Wil-Freds), under the terms of a comprehensive general liability policy (CGL) issued by Home to Wil-Freds. Home subsequently filed a motion for summary judgment alleging that several exclusionary clauses contained within the policy precluded coverage. Wil-Freds filed a cross-motion for summary judgment arguing to the contrary. The circuit court granted Home's motion for summary judgment and denied Wil-Freds' cross-motion, concluding that Home had no duty to defend or indemnify. Wil-Freds then filed this timely appeal.

The sole issue on appeal is whether the trial court erred in concluding that several exclusionary clauses contained within the CGL policy and broad form property damage endorsement issued by

Home precluded coverage thus relieving Home of its duties to defend and indemnify.

Prior to the institution of the litigation underlying this action, Home, from August 1976 to August 1978, entered into at least three contracts of insurance with Wil-Freds. The policies were typical comprehensive general liability policies and contained the following insuring language:

> "The company will pay on behalf of the insured all sums which the insured shall become legally obligated to pay as damages because of:
>
> A. bodily injury or
>
> B. property damage."

The insuring language was subject to 17 exclusions, and the policies were amended by a broad form property damage endorsement. The exclusionary clauses particularly relevant to our discussion provided that the insurance did not apply:

> "(n) to property damage to the named insured's products arising out of such products or any part of such products;
>
> (o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

On July 12, 1977, the Board of Library Directors of the Village of Lombard (Library Board) entered into a contract with Wil-Freds for the construction of a new addition and renovation of existing facilities for the Helen H. Plum Library located in Lombard, Illinois. The contract provided, in part, that Wil-Freds would furnish all labor, materials and equipment necessary to complete the project in accordance with the contract documents provided by the architect, Skidmore, Owings & Merrill (Skidmore).

Sometime after the completion of the project, the Library Board filed a four-count amended complaint against Skidmore and Wil-Freds alleging negligence and breach of contract. Counts III and IV (hereinafter referred to collectively as the underlying complaint) were directed at Wil-Freds and are the focus of this appeal. Count III alleged that as a direct and proximate result of Wil-Freds' "negligent breach of its duty of care" the Library Board was damaged and continued to sustain damage in the following respects: the addition was defectively constructed; the board will suffer and has suffered loss of use of areas of the addition and the real estate upon which it is located; that the board has incurred costs and expenses and will incur further costs in correcting defects in the addition;

cracking and continued deterioration of exterior brickwork; water damage and deterioration in the interior ceilings and walls; cracking and continued deterioration of horizontal mortar joints; continuing damages arising from inadequate slope of a ramp at the southwest entrance; moisture damage due to faulty installation of waterproofing membrane; rusting steel lintel that is contributing to the lack of stability of an exterior wall; cracks at corners and offsets in exterior brickwork; defective coping on exterior wall; defects in cap masonry joints and wall flashing; and moisture damage caused by defective plaza roof cap masonry joints and exterior flashing. Count IV alleged breach of contract against Wil-Freds and incorporated the allegations of count III.

On May 31, 1990, subsequent to the institution of the underlying litigation, Home filed a complaint for declaratory judgment against Wil-Freds, Skidmore and the Library Board seeking a determination of its obligation to provide a defense or indemnification to Wil-Freds or any other party for the incident alleged in the Library Board's underlying complaint. Home later filed a motion for summary judgment, and Wil-Freds filed its response and cross-motion for partial summary judgment. In its motion, Home argued that the injuries alleged in the underlying complaint were unequivocally excluded from coverage by the several exclusionary clauses. In its cross-motion, Wil-Freds argued that the exclusions did not apply.

After the hearing on the motions, the trial court entered its order granting summary judgment in favor of Home and denying Wil-Freds' cross-motion. Specifically, the trial court determined that exclusion (n) and certain other exclusions were applicable and sufficient to establish that there was no duty to defend or indemnify. Wil-Freds then filed this timely appeal.

At the outset we note that, although the trial court concluded that coverage was precluded by several exclusions, it is necessary only for this court to determine whether coverage was properly excluded by any single clause, or combination of clauses. After careful consideration of the relevant case law and the arguments presented by the parties with respect to each exclusion cited, we conclude, without passing judgment as to the other exclusions, that exclusion (n), standing alone, sufficiently precludes coverage for the claims alleged within the underlying complaint.

■■ When determining an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaints. If the underlying complaints allege facts within or potentially within policy coverage, the insurer is obligated to defend its insured even

if the allegations are groundless, false or fraudulent. (*United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.* (1991), 144 Ill. 2d 64, 73.) An insurer may not justifiably refuse to defend an action against its insured unless it is *clear* from the face of the complaint that the allegations fail to state facts which bring the case within, or potentially within, the policy's coverage. (*Wilkin*, 144 Ill. 2d at 73.) Where the complaint alleges several theories of recovery against an insured, the duty to defend arises even if only one such theory is within the potential coverage of the policy. *Wilkin*, 144 Ill. 2d at 73.

■■ The underlying complaints and insurance policies must be liberally construed in favor of the insured, and, where a policy provision is clear and unambiguous, its language must be taken in its plain, ordinary and popular sense. (*Wilkin*, 144 Ill. 2d at 74.) A determination concerning the applicability of an exclusionary clause is governed by the same liberal duty to defend standard. *Wilkin*, 144 Ill. 2d at 78.

The CGL policy between Home and Wil-Freds contained the following exclusions:

"(n) to property damage to the named insured's products arising out of such products or any part of such products;

(o) to property damage to work performed by or on behalf of the named insured arising out of the work or any portion thereof, or out of materials, parts or equipment furnished in connection therewith."

Although exclusion (o) was replaced by clause (z), which appeared in the broad form property damage endorsement, we include it here as an aid to understanding.

Home contends that exclusion (n), by itself, precludes coverage for property damage (as defined within the policy) to the addition. Home's argument is premised on the assertion that a completed building, for the purposes of exclusion (n), is considered a product. Therefore, because the underlying complaint alleged only damage to the addition (*i.e.*, product) itself, coverage was properly excluded. Wil-Freds responds that "work" or "services" are not contained within the policy definition of "named insured's products" and that the reference to "products" in exclusion (n) and the subsequent reference to "work performed" in exclusion (o) (prior to being replaced by (z)) evidenced the parties' intent to preclude coverage for different types of risks. Wil-Freds further argues that if the term "products" was meant to encompass "work performed," exclusion

(o), prior to its replacement by (z), would have been rendered ineffectual.

■ CGL policies typically contain what are commonly referred to as business risks exclusions. Exclusion (n) is one such exclusion. These exclusions are premised on the theory that liability policies are not intended to provide protection against the insured's own faulty workmanship or product, which are normal risks associated with the conduct of the insured's business. (See *Wilkin,* 144 Ill. 2d at 81-82.) The rationale frequently articulated is that liability insurance should not become a warranty or be converted into a performance bond. See, *e.g., Qualls v. Country Mutual Insurance Co.* (1984), 123 Ill. App. 3d 831, 834; *Indiana Insurance Co. v. DeZutti* (Ind. 1980), 408 N.E.2d 1275, 1279.

In *Western Casualty & Surety Co. v. Brochu* (1984), 122 Ill. App. 3d 125, *aff'd* (1985), 105 Ill. 2d 486, this court interpreted exclusionary clauses identical in substance to those in the present case. In *Brochu,* homeowners filed a complaint against a general contractor alleging physical damage and diminution in value as a result of its failure to construct their home in "a workmanlike manner." The general contractor's insurance company subsequently brought a declaratory judgment action to determine its obligation to defend. The court held that the alleged property damage to the house which resulted from soil subsidence was excluded under both exclusions (n) and (o). (*Brochu,* 122 Ill. App. 3d at 129.) In reaching its conclusion with respect to exclusion (n), the court determined that a completed house met the policy definition of product. Product was defined, as it is in the present case, as "goods or products manufactured, sold, handled or distributed by the named insured." (*Brochu,* 122 Ill. App. 3d at 129.) The court then concluded that exclusion (n) applied to preclude coverage for repairs or replacements arising from the failure of an insured's own work or product. (*Brochu,* 122 Ill. App. 3d at 131; see also *Faulkner v. United States Fidelity & Guaranty Co.* (1987), 157 Ill. App. 3d 590, 597 (no duty to defend under identical exclusions where underlying complaint sought damages solely for property damage to building, "*i.e.,* damages for economic losses resulting from [contractor's] poor workmanship"); *Great Southwest Fire Insurance Co. v. Greenlee* (1985), 134 Ill. App. 3d 816. But see *Trovillion v. United States Fidelity & Guaranty Co.* (1985), 130 Ill. App. 3d 694 (duty to defend arose but only because insurer failed to seek declaratory judgment or defend under reservation of rights).) The court was careful to note, however, that damage to *other* property or personal injury resulting

from the failure of the product would not be excluded from coverage. (*Brochu*, 122 Ill. App. 3d at 131.) In its affirmance of Brochu, the supreme court emphasized this fundamental distinction in commenting, " 'the policy in question does not cover an accident of faulty workmanship but rather faulty workmanship which causes an accident.' " *Brochu*, 105 Ill. 2d at 498, quoting *Weedo v. Stone-E-Brick* (1979), 81 N.J. 233, 249, 405 A.2d 788, 796.

As one frequently cited commentator has noted concerning CGL policies:

> " 'The risk intended to be insured is the possibility that the goods, products or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. ... The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.' " *DeZutti*, 408 N.E.2d at 1279, quoting Henderson, *Insurance Protection for Products Liability & Completed Operations—What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 441 (1971).

■ Although we recognize that other jurisdictions have not uniformly adhered to our State's interpretation of exclusion (n) (see, *e.g., Maryland Casualty Co. v. Reeder* (1990), 221 Cal. App. 3d 961, 974, 270 Cal. Rptr. 719, 727 (rejecting interpretation that completed building is a product)), we conclude, in light of our holding in *Brochu* and its subsequent affirmation by our supreme court, that Home owed Wil-Freds no duty to defend against the underlying action because the allegations of the underlying complaint sought damages for repair and replacement arising out of physical injury to only the addition itself. The underlying complaint alleged that Wil-Freds failed to construct and perform in accordance with design specifications, good workmanship and reasonable construction standards. Specifically, it alleged that the board will suffer "*economic harm* by virtue of the building's shorter life" and need for earlier replacement. (Emphasis added.) It is also noted that there are no allegations of harm to other property or persons, only allegations arising from harm to the addition itself. Finally, we note that our interpretation is consistent with the underlying rationale that CGL policies, absent some specific provision insuring against such a risk, are not intended to provide protection against an insured's own faulty workmanship or product. Therefore, the trial

court did not err in concluding that exclusion (n) precluded coverage for the claims alleged in the Library Board's complaint against Wil-Freds.

For the foregoing reasons, the order of the circuit court of Du Page County granting plaintiff's motion for summary judgment and denying defendant's cross motion is affirmed.

Affirmed.

BOWMAN and NICKELS, JJ., concur.