STATE FARM FIRE AND CASUALTY COMPANY, Plaintiff-Appellant, v. JAMES J. TILLERSON, d/b/a J.J. Tillerson Construction Company, *et al.*, Defendants-Appellees.

Fifth District    No. 5—01—0623

Opinion filed September 18, 2002.

Stephen W. Thomson, of Thomson Law Offices, P.C., of Edwardsville, for appellant.

Lawrence O. Taliana, of Taliana, Rubin & Buckley, of Edwardsville, for appellees.

JUSTICE KUEHN delivered the opinion of the court:

Plaintiff State Farm Fire and Casualty Company (State Farm) appeals the trial court's entry of a judgment on the pleadings for defendant James J. Tillerson, doing business as J.J. Tillerson Construc-

tion Company (Tillerson), in State Farm's action for a declaration that it had no duty to defend Tillerson in an action by Jeffrey and Debra Gause. The sole issue for review is whether the trial court erred in finding that State Farm had a duty to defend its insured based on the underlying complaint. We reverse.

Tillerson was the holder of a contractor's liability policy issued by State Farm effective March 14, 1992, through March 14, 1993. A second contractor's liability policy was issued effective March 14, 1993, through March 14, 1994.

On February 18, 1993, the Gauses and Tillerson executed a "Proposed Estimate," whereby Tillerson, for a fee of $37,602.23, agreed to construct a new room addition and convert the Gauses' existing carport into a garage. Sometime after the completion of the project, the Gauses filed suit against Tillerson arising out of the aforementioned agreement. Specifically, the complaint alleged that the Gauses were injured as a result of Tillerson's breach of an express warranty of workmanship, breach of the implied warranty of habitability, and breach of the implied warranty of fitness for ordinary and particular purpose and that the breaches proximately caused the Gauses' damage. The crux of the Gauses' underlying complaint is that Tillerson breached his warranties to the Gauses by building over a cistern and failing to take the necessary precautions to prevent uneven settling of the soil beneath the room addition, resulting in the damage identified in the complaint.

Tillerson tendered his defense to State Farm. On November 14, 1996, State Farm filed a complaint seeking a declaration that it had no duty to defend Tillerson in the underlying suit. On March 18, 1997, State Farm filed a motion for a judgment on the pleadings. On April 19, 1997, the Gauses filed a motion for a judgment on the pleadings, seeking a summary judgment. On December 5, 1997, the court denied both motions for a judgment on the pleadings. On June 19, 1998, to clarify its prior ruling, the trial court granted the motion for a summary judgment filed by the Gauses and denied State Farm's motion to reconsider.

The certified question is whether State Farm has a duty to defend Tillerson under its contractor's liability policy against the allegations of the underlying first-amended complaint filed by the Gauses. This question includes the following set of issues: (1) whether or not the claims of the breach of an express warranty of workmanship, the breach of the implied warranty of habitability, and the breach of the implied warranty of fitness for ordinary and particular purpose, as specifically described in the underlying complaint against Tillerson, allege an "occurrence" as defined under the liability policy, (2) whether

or not the claims specifically described in the underlying complaint against Tillerson allege "property damage" as defined under the liability policy, (3) whether or not exclusionary language contained within the liability policy excludes liability assumed by the insured in a contract or agreement, and (4) whether or not allegations in the underlying complaint trigger exclusions described in the liability policy for damage to the insured's own work.

■ On appeal, we review a judgment on the pleadings on a *de novo* basis. *Employers Insurance of Wausau v. Ehlco Liquidating Trust*, 186 Ill. 2d 127, 138, 708 N.E.2d 1122, 1129 (1999). A judgment on the pleadings should be entered if the admissions contained within the pleadings reveal no genuine issues of material fact such that the movant would be entitled to a judgment as a matter of law. *Ehlco Liquidating Trust*, 186 Ill. 2d at 138, 708 N.E.2d at 1129. We must consider that all well-pleaded facts by the nonmoving party are admitted. *Ehlco Liquidating Trust*, 186 Ill. 2d at 138, 708 N.E.2d at 1129. We must also examine the pleadings to determine whether a genuine issue of material fact exists, and if we find no such issue, then we determine if the matter at issue can be resolved solely as a matter of law. *Ehlco Liquidating Trust*, 186 Ill. 2d at 138, 708 N.E.2d at 1129.

■ To determine an insurer's duty to defend its insured, the court must look to the allegations of the underlying complaint and compare those allegations to the relevant coverage provisions of the insurance policy. *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 701, 661 N.E.2d 451, 454 (1996). Additionally, we may consider " 'true but unpleaded facts, which, when taken together with the complaint's allegations, indicate that the claim is within or potentially within the policy's coverage.' " *Monticello Insurance Co.*, 277 Ill. App. 3d at 701-02, 661 N.E.2d at 454, quoting *Associated Indemnity Co. v. Insurance Co. of North America*, 68 Ill. App. 3d 807, 816, 386 N.E.2d 529, 536 (1979). If the underlying complaint alleges facts within or potentially within the policy's coverage provisions, the insurer has an obligation to defend even if the allegations are groundless, false, or fraudulent. *United States Fidelity & Guaranty Co. v. Wilkin Insulation Co.*, 144 Ill. 2d 64, 73, 578 N.E.2d 926, 930 (1991).

■ An insurer may not refuse to defend an action against its insured unless it is clear from the face of the underlying complaint that the allegations fail to state facts which bring the case potentially within the policy's coverage. *Dixon Distributing Co. v. Hanover Insurance Co.*, 161 Ill. 2d 433, 439, 641 N.E.2d 395, 398 (1994). If the underlying complaint alleges several theories of recovery against the insured, the insurer must defend the insured even if only one such theory is potentially within the coverage of the policy. *Wilkin Insula-*

*tion Co.*, 144 Ill. 2d at 73, 578 N.E.2d at 930, citing *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 194, 355 N.E.2d 24, 28 (1976).

■ The threshold that the complaint must satisfy in order to present a potential coverage claim is low. *La Rotunda v. Royal Globe Insurance Co.*, 87 Ill. App. 3d 446, 451, 408 N.E.2d 928, 933 (1980). The underlying complaint and the insurance policy should be liberally construed in favor of the insured. *Wilkin Insulation Co.*, 144 Ill. 2d at 74, 578 N.E.2d at 930. Policy language must be interpreted in its " 'plain, ordinary[,] and popular sense,' " and where a provision is clear and unambiguous, it will be applied as written. *Wilkin Insulation Co.*, 144 Ill. 2d at 74, 578 N.E.2d at 930, quoting *Hartford Accident & Indemnity Co. v. Case Foundation Co.*, 10 Ill. App. 3d 115, 121, 294 N.E.2d 7, 12 (1973). A determination concerning the applicability of an exclusionary clause is governed by the same liberal duty-to-defend standard. *Wilkin Insulation Co.*, 144 Ill. 2d at 78, 578 N.E.2d at 933.

With these principles in mind, we review the allegations of the underlying complaint and the relevant insurance policy. We must determine whether the underlying complaint alleged potentially covered "property damage" caused by an "occurrence" that is not excluded by the various exclusionary clauses in the insurance policy.

To determine whether State Farm has a duty to defend Tillerson in the underlying lawsuit, we must determine whether the alleged damage resulted from an "occurrence." For purposes of this discussion only, we assume property damage.

■ Tillerson's contractor's liability policy states, "This insurance applies only to bodily injury or property damage caused by an occurrence ***." The policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions which result in bodily injury or property damage." The use of the word "occurrence" in insurance policies broadens coverage and eliminates the need to find an exact cause of damages, as long as they are neither intended nor expected by the insured. *Bituminous Casualty Corp. v. Gust K. Newburg Construction Co.*, 218 Ill. App. 3d 956, 965, 578 N.E.2d 1003, 1009 (1991). Nevertheless, the occurrence must still be accidental. *Bituminous Casualty Corp.*, 218 Ill. App. 3d at 965, 578 N.E.2d at 1009.

■ State Farm argues that given the plain and ordinary meaning of "accident," the factual allegations of the Gauses' complaint do not describe an accident and thereby fail to trigger State Farm's duty to defend Tillerson under the policy State Farm issued to Tillerson. The Gauses alleged that Tillerson built the room addition over an existing cistern and failed to properly compact the soil before constructing the room addition. State Farm correctly states that this court has held

that an " 'accident' " is " 'an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character.' " *State Farm Fire & Casualty Co. v. Watters*, 268 Ill. App. 3d 501, 506, 644 N.E.2d 492, 495-96 (1994), quoting *Aetna Casualty & Surety Co. v. Freyer*, 89 Ill. App. 3d 617, 619, 411 N.E.2d 1157, 1159 (1980). Furthermore, the " 'natural and ordinary consequences of an act do not constitute an accident.' " *Watters*, 268 Ill. App. 3d at 506, 644 N.E.2d at 496, quoting *Freyer*, 89 Ill. App. 3d at 619, 411 N.E.2d at 1159. Carrying its argument forward, State Farm contends that Tillerson's alleged act of faulty workmanship could not be the typical fortuitous action constituting an accident.

The Gauses' damages were not the result of an accident. The Gauses' complaint alleged that the work Tillerson performed on the room addition and carport conversion was "defective in design, material[,] and workmanship because [Tillerson] built the addition over a cistern without taking necessary precautions[ ] and failed to take precautions to prevent the damage caused by the settling of ground underneath the room addition." The complaint further alleged that the room addition and carport conversion are not fit for their intended purpose "as a direct result of [Tillerson's] failure to properly compact the soil supporting the new addition." These allegations do not fall within the meaning of an accident or an occurrence.

Where the defect is no more than the natural and ordinary consequences of faulty workmanship, it is not caused by an accident. See *Bituminous Casualty Corp.*, 218 Ill. App. 3d 956, 578 N.E.2d 1003. The factual allegations of the Gauses' complaint against Tillerson do not allege an accident. They allege no unforeseen or undesigned, sudden, or unexpected event. The construction defects set forth in the Gauses' complaint are the natural and ordinary consequences of Tillerson's alleged improper construction techniques in failing to properly compact the soil and in failing to fill or remove a cistern under the ground, prior to construction. Thus, the allegations of the underlying complaint do not potentially fall within the policy coverage. State Farm has no duty to defend Tillerson in the Gauses' suit.

We must further determine whether or not the Gauses' complaint alleged "property damage," as defined by the relevant policy. The contractor's liability policy defines "property damage" as "physical injury to or destruction of tangible property, including all resulting loss of that property," or "loss of use of tangible property that is not physically injured or destroyed, provided such loss of use is caused by physical injury to or destruction of tangible property."

The supreme court in *Travelers Insurance Co. v. Eljer Manufactur-*

*ing, Inc.*, 197 Ill. 2d 278, 757 N.E.2d 481 (2001), concluded: "[T]o the average, ordinary person, tangible property suffers a 'physical' injury when the property is altered in appearance, shape, color[,] or in other material dimension. Conversely, to the average mind, tangible property does not experience 'physical' injury if that property suffers intangible damage, such as diminution in value ***." *Eljer Manufacturing, Inc.*, 197 Ill. 2d at 301-02, 757 N.E.2d at 496. " '[C]omprehensive general liability policies *** are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses. [Citations.] Finding coverage for the cost of replacing or repairing defective work would transform the policy into something akin to a performance bond.' " *Eljer Manufacturing, Inc.*, 197 Ill. 2d at 314, 757 N.E.2d at 503, quoting *Qualls v. Country Mutual Insurance Co.*, 123 Ill. App. 3d 831, 833-34, 462 N.E.2d 1288, 1291 (1984).

In their complaint, the Gauses merely seek either the repair or the replacement of defective work or the diminishing value of the home. The Gauses seek a recovery for economic loss, not physical injury to tangible property. There is no allegation that Tillerson tortiously injured the Gauses' home. No property damage is alleged and coverage is not afforded. The trial court erred in finding that State Farm had a duty to defend Tillerson.

State Farm further contends that any potential coverage alleged in the underlying complaint is precluded by various exclusionary clauses in the insurance policy. The policy excludes coverage for "property damage for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement." This exclusion does not apply to liability for damages (a) assumed in a contract or agreement that is an insured contract or (b) that the insured would have in the absence of a contract or agreement. Illinois courts have refused to permit insured parties to receive insurance coverage for damages that result from a breach of contract. *Indiana Insurance Co. v. Hydra Corp.*, 245 Ill. App. 3d 926, 615 N.E.2d 70 (1993).

Coverage under contractor general liability policies is for tort liability for damage to other property, not for the insured's contractual liability for economic loss. *Home Indemnity Co. v. Wil-Freds, Inc.*, 235 Ill. App. 3d 971, 977, 601 N.E.2d 281, 285 (1992). As we have discussed above, the Gauses do not allege any sudden or calamitous event that caused damage to other property. They only pursue a claim for a breach of contract to recover their alleged economic loss. This breach-of-contract claim is excluded under the above-cited exclusion.

The contractor's liability policy between State Farm and Tillerson also contains the following relevant exclusions:

"11. to property damage to:

\* \* \*

e. that particular part of real property on which you or any contractor or subcontractor working directly or indirectly on your behalf is performing operations, if the property damage arises out of those operations; or

f. that particular part of any property that must be restored, repaired[,] or replaced because your work was incorrectly performed on it. This part of the exclusion does not apply to property damage included in the products-completed operations hazard.

\* \* \*

13. to property damage to your work arising out of it or any part of it and included in the products-completed operations hazard.

\* \* \*

14. to property damage to impaired property or property that has not been physically injured, arising out of:

a. a defect, deficiency, inadequacy[,] or dangerous condition in your product or your work; or

b. a delay or failure by you or anyone acting on your behalf to perform a contract or agreement in accordance with its terms.

This exclusion does not apply to the loss of use of other property arising out of sudden and accidental physical injury to your product or your work after it has been put to its intended use."

These exclusions are premised on the theory that liability policies are not intended to provide protection against the insured's own faulty workmanship or product, which are normal risks associated with the conduct of the insured's business. See *Home Indemnity Co.*, 235 Ill. App. 3d at 976, 601 N.E.2d at 284. The rationale frequently articulated is that liability insurance should not become a warranty or be converted into a performance bond. *Qualls*, 123 Ill. App. 3d at 834, 462 N.E.2d at 1291. " 'The risk intended to be insured is the possibility that the goods, products[,] or work of the insured, once relinquished or completed, will cause bodily injury or damage to property other than to the product or completed work itself, and for which the insured may be found liable. \*\*\* The coverage is for tort liability for physical damages to others and not for contractual liability of the insured for economic loss because the product or completed work is not that for which the damaged person bargained.' " *Home Indemnity Co.*, 235 Ill. App. 3d at 977, 601 N.E.2d at 285, quoting R. Henderson, *Insurance Protection for Products Liability & Completed Operations—What Every Lawyer Should Know*, 50 Neb. L. Rev. 415, 441 (1971).

Here, the Gauses' complaint alleged that Tillerson displayed improper workmanship, breaching both implied and express warran-

ties under the contract. The only alleged damage is to the single structure upon which Tillerson worked. We conclude that State Farm owed Tillerson no duty to defend in the underlying action because the allegations of the underlying complaint sought damages for repair and replacement arising out of physical injury to only the addition and carport itself. The underlying complaint alleged that Tillerson failed to construct and perform in accordance with design specifications, good workmanship, and reasonable construction standards. There are no allegations of harm to other property or persons.

Tillerson argues that the aforementioned policy conditions do not apply to him because he purchased "products-completed operations hazard" coverage. The definition in the policy states that "products-completed operations hazard" includes "all bodily injury and property damage arising out of your product or your work except products that are still in your physical possession or work that has not yet been completed or abandoned. The bodily injury or property damage must occur away from premises you own or rent under your business, including the selling, handling[,] or distribution of your product for consumption on premises you own or rent."

Products-completed operations hazard coverage is not applicable here. This provision of the policy specifically covers bodily injury and property damage *arising out of* "your product or your work." In this instance, the room addition and the carport conversion constitute "your product or your work." In the underlying complaint, there are no allegations of harm to other property or persons, only allegations arising from harm to the room addition and carport conversion itself. The alleged property damage did not arise out of "your product or your work." The sole damage is to the product or work itself. Accordingly, the products-completed operations hazard provision provides no coverage to Tillerson. The trial court erred in concluding that State Farm has a duty to defend Tillerson.

Further, contrary to Tillerson's argument, we find that this case is not like *Trovillion v. United States Fidelity & Guaranty Co.*, 130 Ill. App. 3d 694, 474 N.E.2d 953 (1985). In *Trovillion*, the plaintiffs built a house as general contractors for James and Melissa Williamson. The Williamsons sued the plaintiffs for breach of contract because of their failure to erect the house in a good and workmanlike manner. The Williamsons' complaint alleged that the floor sagged because of inadequate support and that the floor in the bedroom area buckled and became detached from the walls. The walls and vinyl kitchen floor cracked. The complaint also alleged that the roof leaked and that the mortar and bricks in the exterior walls and the concrete footings cracked because of structural defects. *Trovillion*, 130 Ill. App. 3d at

697, 474 N.E.2d at 955. The plaintiffs' insurance company initially undertook their defense under a reservation of rights but later withdrew its defense, citing certain policy exclusions.

The reviewing court determined that the third party's damages were potentially covered by the policy. However, *Trovillion* is distinguishable from this case. In *Trovillion*, the appellate court noted that the insurer must have been uncertain of its potential liability, because it initially undertook the defense of the Williamsons' claim. The appellate court concluded that the duty to defend arose because the insurer failed to secure a declaratory judgment of its rights and obligations before or pending the trial of the original action and it failed to defend under a reservation of rights. *Trovillion*, 130 Ill. App. 3d at 700, 474 N.E.2d at 958. Further, *Trovillion* did not address the argument that the third party's damages were not caused by an occurrence or the argument that property damage was not alleged.

For the foregoing reasons, we reverse the judgment of the circuit court of Madison County.

Reversed.

MAAG, P.J., and RARICK, J., concur.