NOTICE

Decision filed 03/04/22. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2022 IL App (5th) 210254-U

NO. 5-21-0254

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

| | | |
|---|---|---|
| KORTE & LUITJOHAN CONTRACTORS, INC., | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Madison County. |
| | ) | |
| v. | ) | No. 20-L-111 |
| | ) | |
| ERIE INSURANCE EXCHANGE, | ) | Honorable |
| | ) | Christopher P. Threlkeld, |
| Defendant-Appellee. | ) | Judge, presiding. |

JUSTICE MOORE delivered the judgment of the court.
Presiding Justice Boie and Justice Vaughan concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The circuit court did not err in granting summary judgment to insurance company on the plaintiff's complaint for a breach of contract based on a commercial general liability policy and bad faith damages pursuant to section 155 of the Illinois Insurance Code (215 ILCS 5/155 (West 2018)) where the underlying complaint alleged defective workmanship by a subcontractor in the installation of an elevator, and there was no allegation that the defective elevator caused property damage that would bring the complaint under the purview of the policy. The circuit court did not err in barring the plaintiff's expert testimony as to the legal meaning of the policy at issue, nor in denying the plaintiff's motion to compel discovery.

¶ 2    The plaintiff, Korte & Luitjohan Contractors, Inc. (Korte), appeals the July 23, 2021, order of the circuit court of Madison County that granted a summary judgment in favor of the defendant, Erie Insurance Exchange (Erie), as to its complaint for breach of contract based on a commercial general liability policy of insurance issued by Erie to Korte, and barred Korte's expert testimony regarding the meaning of the policy. In addition, Korte appeals the October 30, 2020, order that denied its motion to compel discovery. For the following reasons, we affirm.

1

¶ 3                                I. BACKGROUND

¶ 4     Korte filed its original complaint in the circuit court of Madison County on January 29, 2020, and its first amended complaint (complaint) on March 4, 2020, which alleges the following facts. On or about September 7, 2017, Six Mile Regional Library District (the Library District) served Korte with a complaint (the underlying complaint) which had been filed in the circuit court of Madison County. The underlying complaint, which was attached to the complaint as Exhibit F, alleges that in September of 2013, Korte contracted with the Library District to perform a construction project at its library building in Granite City, which included the installation of two elevators. Custom Home Elevators of St. Louis, a subcontractor of Korte, installed the elevators.

¶ 5     The underlying complaint alleges that the elevators have not worked since their installation in August of 2014. In particular, the underlying complaint alleges that, on over 30 separate occasions, one or both of the elevators failed to function, including but not limited to, the following: (1) the elevators temporarily trapped patrons or employees who were riding on the elevators at the time; (2) the elevators failed to travel to specific floors/levels of the library; (3) the elevators failed to respond when called; (4) the elevator doors failed to close; (5) the elevators operated with such excessive noise as to alarm patrons and employees; and (6) one elevator was out of order from July 14, 2016, continuously through mid-August 2016. The underlying complaint alleges that the Library District "incurred damages as a result of the failure of [Korte] to provide reliable, functioning elevators."

¶ 6     Count I of the underlying complaint contains a cause of action against Korte for breach of contract and count II alleges a cause of action against Korte for a breach of the implied warranty of merchantability. Count III alleges a cause of action against Korte for breach of the warranty of fitness for a particular purpose and count IV alleges a cause of action against Korte for breach of

an express, written warranty. The remaining counts of the underlying complaint are addressed to Custom Home Elevators of St. Louis.

¶ 7    According to Korte's complaint, on or before September 1, 2016, Korte tendered the underlying complaint to Erie, requesting Erie defend and indemnify Korte pursuant to an "Ultraflex Package Policy" (the policy) Erie issued to Korte during the relevant policy period. The policy is attached to the complaint as Exhibit A, and we note the following relevant policy terms. The policy period covers the timeframe relevant to the underlying complaint, from July 1, 2013, to July 1, 2014. On the declarations page, relevant coverages for "Property Protection" include "Business Personal Property & Property of Others," and with regard to the "Limits of Insurance," a "Products/Completed Operations Aggregate Limit" is listed in the amount of $2 million. In the "Insuring Agreement," under Section I Coverages, Coverage A, titled "Bodily Injury and Property Damage Liability," the Commercial General Liability Form states as follows:

"a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'bodily injury' or 'property damage' to which this insurance applies. We will have the right and duty to defend the insured against any 'suit' seeking those damages. However, we will have no duty to defend the insured against any 'suit' seeking damages for 'bodily injury' or 'property damage' to which this insurance does not apply.

b. This insurance applies to 'bodily injury' and 'property damage' only if:

1. The 'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' [.]"

¶ 8    Section V of the Commercial General Liability Form in the policy includes the following relevant definitions:

"14. 'Occurrence' means an accident, including continuous or repeated exposure to substantially the same general harmful conditions. ***

16. 'Products-completed operations hazard':

a. Includes all 'bodily injury' and 'property damage' occurring away from premises you own or rent and arising out of 'your product' or 'your work' except:

1. Products that are still in your physical possession; or

2. Work that has not yet been completed or abandoned. ***

17. 'Property damage' means:

a. Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b. Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

¶ 9    The policy contains a potentially relevant endorsement entitled "Contractors' Erieplaceable Enhancements Endorsement," which, *inter alia*, adds "Voluntary Property Damage" to the "Insuring Agreement" of the policy, with the following potentially relevant language:

"1. Insuring Agreement

We will pay those sums that the insured becomes legally obligated to pay as damages because of unintentional damage to property of others;

a.   Caused by the insured or while the property is in the possession of the insured; and

b.   Arising out of your operations described in the Declarations and covered by this policy.

This insurance applies to 'property damage' only if:

4

a. The 'property damage' is caused by an 'occurrence' that takes place in the 'coverage territory' [.]"

¶ 10 On September 26, 2016, Erie issued a denial letter to Korte, which is not attached to the complaint. However, subsequent correspondence from Erie to Korte, dated January 22, 2020, is attached to the complaint as Exhibit H. This correspondence was issued in response to Korte's December 20, 2019, demand that Erie pay the $159,464.90 verdict entered against Korte in the underlying action and to reimburse Korte for the attorney fees it incurred in defending the Library District's claims and that it continued to incur in pursuing reimbursement from Custom Home Elevators of St. Louis. According to this correspondence, Erie denied Korte's tender for defense and indemnity because the underlying complaint did not allege "property damage" caused by "an occurrence" to trigger the "products-completed operations hazard" or the "voluntary property damage" coverages in the policy.

¶ 11 Count I of Korte's complaint alleges that Erie's denial of coverage amounted to a breach of contract and count II alleges that its refusal to defend or indemnity Korte amounted to bad faith pursuant to section 155 of the Illinois Insurance Code. 215 ILCS 5/155 (West 2018). On July 8, 2020, Korte filed a motion to compel Erie to answer certain interrogatories and comply with certain requests to produce, to which Erie had objected. The interrogatories and requests to produce at issue requested information pertaining to Erie's relationship to the Insurance Service Office (ISO),[1] including ISO circulars, ISO filings, and reinsurance information, to which Erie had objected on relevance grounds.

---

[1]The report of Korte's proposed expert witness, Michael Averill, which is discussed in detail later in this order, describes the ISO as a:

"world-wide insurance services organization which provides advisory rates and/or loss costs, for rating purposes, policy forms and endorsements and collects statistics for property and casualty lines of insurance. *** Over 1,000 insurance companies subscribe to ISO's services. ISO advisory policy forms and endorsements provide the contract provisions to effect insurance for a given line

5

¶ 12    On October 30, 2020, Erie filed a motion for summary judgment on the basis that the underlying complaint does not allege "property damage" as defined by the policy and does not allege an "occurrence" or accident as required by the policy. In addition, Erie named a couple exclusions it contended would bar coverage, but these are not necessary to our disposition of this appeal, so we will not recite them here. On October 30, 2020, the circuit court also denied Korte's motion to compel, but there is no transcript of proceedings for any hearing on that date in the record on appeal. In response to Erie's motion for summary judgment, Korte filed the expert report of Michael L. Averill, dated June 9, 2020, along with Mr. Averill's deposition. According to this report, Mr. Averill has been employed in the property and casualty insurance business since June 1971, and was employed by ISO from June 1971 through June 1987, eventually as manager of the Commercial Casualty Division.

¶ 13    In Mr. Averill's report and deposition, he opines, *inter alia*, that Erie's denial of coverage "based on the presumed fact that the failure of an elevator to work properly is not an 'occurrence' " is incorrect. He opines that, because the failure of the elevators to work properly were not intentional acts of Korte or its subcontractor, such failure were accidents which are included in the definition of "occurrence" in the policy. Accordingly, Mr. Averill opines that Erie had a duty to defend Korte and is responsible for indemnification and legal costs associated with the underlying complaint. In addition to Mr. Averill's report and deposition, Korte filed several pamphlets and circulars from the ISO on which Mr. Averill had purported to rely in making his interpretation opinions of the policy.

---

of insurances. There are coverage forms and parts, and conditions which can apply to a particular line of insurance or type of insurance—for example, all commercial lines of business for which ISO produces coverage forms and/or parts. The endorsements developed by ISO are either optional for company use or insured election, or mandatory—that is, need to be attached to all applicable policies—for example, to comply with state law or regulation."

¶ 14    On January 15, 2021, Erie filed a motion to bar Mr. Averill's testimony on the basis that his opinions are inadmissible legal conclusions under Illinois law. Erie further argued that admission of Mr. Averill's testimony would be an invasion of the province of the circuit court, which is tasked with determining Erie's defense and indemnity obligation under the policy. Erie also filed a reply in support of its motion, arguing that the ISO pamphlets and circulars are inadmissible parol evidence because they were outside the four corners of the policy. Moreover, Erie reiterated its position that its commercial general liability policy does not apply where the alleged "property damage" underlying the complaint does not arise from damage to a third party's property ancillary to any allegation of defective workmanship. In addition, Erie reiterated its position that defective workmanship does not fall under the definition of "occurrence" in the policy.

¶ 15    On April 15, 2021, Korte filed a motion to reconsider the circuit court's October 30, 2020, order denying its motion to compel. Although the motion to reconsider does not specifically address the exact discovery responses it was then seeking to compel, this court's reading of this pleading leads it to conclude that Korte was seeking ISO circulars, filings and reinsurance information, and other information regarding Erie's affiliation with the ISO. In this pleading, Korte also stated that it should be afforded the opportunity to depose the person at Erie who is responsible for communicating with the ISO regarding its efforts to elicit changes to ISO forms and interpretations.

¶ 16    The circuit court held a hearing on all pending motions on April 19, 2021. On July 23, 2021, the circuit court entered a detailed written order in which it denied Korte's motion to reconsider its denial of Korte's motion to compel, granted Erie's motion to bar the testimony of Michael Averill, and granted Erie's motion for summary judgment. The circuit court found that

7

the allegations of the underlying complaint do not bring the claim within the potential indemnity coverage of the policy. Moreover, the circuit court found that Mr. Averill's testimony regarding the drafting history of the policy was improper because the terms of the policy are unambiguous. Thus, the circuit court entered judgment in favor of Erie as to both counts of Korte's complaint. On August 20, 2021, Korte filed a notice of appeal.

¶ 17                                             II. ANALYSIS

¶ 18    On appeal, Korte argues that the circuit court erred in: (1) granting a summary judgment in favor of Erie, finding that under the policy, Erie had no duty to defend or indemnify Korte as to the underlying complaint; (2) barring Michael Averill from testifying as an expert witness regarding insurance policy interpretation; and (3) denying the plaintiff's motion to compel discovery of the person at Erie who "deals with" the Department of Insurance so that Korte could depose that person. We will address each of these issues in turn.

¶ 19                                          1. *Summary Judgment*

¶ 20    We begin with a statement of our well-established standards for reviewing orders granting summary judgment. It was set forth as follows by our colleagues in the First District:

> "A motion for summary judgment is properly granted when the pleadings, depositions, admissions, and affidavits on file establish that no genuine issue as to any material fact exists and the moving party is entitled to judgment as a matter of law. [Citations.] A defendant can demonstrate it is entitled to summary judgment in two ways. [Citation.] First, the defendant can affirmatively show that some element of the case must be resolved in its favor. [Citation.] Alternatively, the defendant can establish that the plaintiff cannot prove an essential element of the cause of action. [Citation]. 'An order granting summary judgment should be reversed if the evidence shows that a genuine issue

of material fact exists or if the judgment was incorrect as a matter of law.' [Citation.] We review the trial court's granting of such motion *de novo*." *Viking Construction Management, Inc. v. Liberty Mutual Insurance Co.*, 358 Ill. App. 3d 34, 40-41 (2005).

¶ 21    Here, the circuit court granted a summary judgment in favor of Erie because it found that, as a matter of law, Erie did not have a duty to defend or indemnify Korte with respect to the proceedings initiated by the underlying complaint. "A duty to defend arises if the complaint's allegations fall within or potentially within the coverage provisions of the policy." (Internal quotation marks omitted.) *Id.* at 41. An insurer may refuse to defend an insured only if the allegations of the underlying complaint preclude any possibility of coverage. *Id.* In order to determine that the potential for coverage exists under a commercial general liability policy in a situation where the underlying complaint alleges breach of contract for defective workmanship, we must first determine " 'whether there was an "occurrence" within the policy period.' " *Id.* (quoting R. Franco, *Insurance Coverage for Faulty Workmanship Claims Under Commercial General Liability Policies*, 30 Tort & Insurance L.J. 785, 788 (Spring 1995)). "Once an 'occurrence' has been established, we must determine whether there was 'property damage.' " *Id.* (citing 30 Tort & Insurance L.J. at 788). If both an "occurrence" and "property damage" have been established, only then do we need to establish whether any exclusions apply. *Id.* at 41-42 (citing 30 Tort & Insurance L.J. at 788); see also *Monticello Insurance Co. v. Wil-Freds Construction, Inc.*, 277 Ill. App. 3d 697, 703 (1996).

¶ 22    As in the cases cited above, the commercial general liability insurance policy at issue defines "occurrence" as "an accident" including continuous or repeated exposure to substantially the same general harmful conditions. See *id.* at 42 (citing 30 Tort & Insurance L.J. at 788). Although the policy does not define "accident," it has been defined throughout Illinois case law as

9

" 'an unforeseen occurrence, usually of an untoward or disastrous character or an undesigned sudden or unexpected event of an inflictive or unfortunate character.' " *Id.* (quoting *State Farm Fire & Casualty Co. v. Tillerson*, 334 Ill. App. 3d 404, 409 (2002)). "It has generally been held that a '[commercial general liability] policy will not cover a general contractor's suit for breach of contract' and 'there is no "occurrence" when a subcontractor's defective workmanship necessitates removing and repairing work.' " *Id.* (quoting 30 Tort & Insurance L.J. at 789). Similarly, the policy at issue contains the standard policy definition of property damage, which is at issue here, and "differentiates between physical damage to tangible property and intangible property losses, such as economic interests." (Internal quotation marks omitted.) *Id.* "Courts do not consider the latter types of losses to be 'property damage.' " *Id.* (citing 30 Tort & Insurance L.J. at 789). "Similarly, a breach of contract claim does not constitute 'property damage,' 'since it does not result from a fortuitous event.' " *Id.* (quoting 30 Tort & Insurance L.J. at 789 n.23).

¶ 23 Our courts have thus concluded that, under Illinois law, construction defects do not constitute an accident or occurrence necessary to trigger coverage under commercial general liability policies. See, *e.g.*, *Traveler's Insurance Co. v. Eljer Manufacturing, Inc.*, 197 Ill. 2d 278, 314 (2001) (noting that if we interpreted such policies to provide coverage for defective workmanship, such policies would not only provide insurance against tort liability, but would function as a performance bond as well). Illinois courts have repeatedly held that such policies "are intended to protect the insured from liability for injury or damage to the persons or property of others; they are not intended to pay the costs associated with repairing or replacing the insured's defective work and products, which are purely economic losses." (Internal quotation marks omitted.) *Id.*

¶ 24    Here, the underlying complaint alleges that Korte breached its contract by providing, through its subcontractor, elevators that were faulty and/or installed ineffectively. The complaint does not allege that any of the Library District's property was damaged because of the faulty elevators. The complaint does not seek money damages for any property damage, but rather, seeks compensation for correctly completing the installation of the elevators, and for economic losses the Library District sustained because of having to use the faulty elevators until they could be repaired. Accordingly, we find that the underlying complaint does not allege "property damage" caused by "an occurrence" as required by the policy to trigger coverage. Because coverage is not triggered at all by the allegations of the underlying complaint, it is unnecessary to determine the application of any of the exclusions.[2] Accordingly, the circuit court did not err when it granted a summary judgment in favor of Erie on both counts of Korte's complaint.

¶ 25                            2. *Mr. Averill's Testimony*

¶ 26    Korte next argues that the circuit court erred in barring Mr. Averill's testimony regarding his opinions on the correct interpretation of the insurance policy. We review the circuit court's decision on the admissibility of expert testimony under an abuse of discretion standard. *Maggi v. RAS Development, Inc.*, 2011 IL App (1st) 091955, ¶ 67. We find no such abuse of discretion here. The construction and interpretation of an insurance policy is a question of law for the court. *William J. Templeman Co. v. Liberty Mutual Insurance Co.*, 316 Ill. App. 3d 379, 390 (2000). In the absence of ambiguity, expert testimony is inappropriate. *William Blair & Co. v. FI Liquidation Corp.*, 358 Ill. App. 3d 324, 338 (2005). As set forth above, we find that the circuit court was

---

[2]Based on this same analysis, neither the "products-completed operations hazard" coverage definition nor the "Voluntary Property Damage" coverage included in the "Erieplaceable Enhancements Endorsement" provide coverage based on the allegations of the underlying complaint. As set forth above, both of these coverages are identical to the main property damage liability coverage in that both require that there be "property damage" caused by an "occurrence." The underlying complaint simply makes no allegations of such damage.

11

correct in its interpretation of the unambiguous meaning of the insurance policy at issue as it applies to the allegations of the underlying complaint. Accordingly, the circuit court did not err in barring the testimony of Mr. Averill as to the meaning of the policy.

¶ 27                                    3. *Denial of Motion to Compel*

¶ 28    Finally, Korte argues that the circuit court erred when it denied its motion to compel its discovery of information regarding Erie's correspondence with the ISO and other ISO information. Illinois Supreme Court Rule 201(b)(1) (eff. July 1, 2014) states that, "[e]xcept as provided in these rules, a party may obtain by discovery full disclosure regarding any matter relevant to the subject matter involved in the pending action." Discovery should be denied where there is insufficient evidence that the discovery is relevant. *Dufour v. Mobile Oil Corp.*, 301 Ill. App. 3d 156, 160 (1998). A circuit court's ruling on a motion to compel discovery will stand absent a manifest abuse of discretion affirmatively and clearly shown by the appellant. *Id.*

¶ 29    In the case at bar, the circuit court was tasked with determining whether the allegations of the underlying complaint potentially triggered the coverage provisions of the policy. The information that Korte sought to compel constituted, at best, parol evidence. Parol evidence is not appropriate to interpret policy language that is facially unambiguous. *Lee v. Allstate Life Insurance Co.*, 361 Ill. App. 3d 970, 979 (2005). As explained above, the circuit court was correct to determine that the policy was unambiguous with respect to any potential coverage for the allegations contained in the underlying complaint. Accordingly, parol evidence was not relevant, and the circuit court did not abuse its discretion in refusing to compel its discovery.

¶ 30                                    III. CONCLUSION

¶ 31    For the foregoing reasons, we affirm the July 23, 2021, order of the circuit court of Madison County that granted a summary judgment in favor of Erie, and barred Korte's expert testimony

12

regarding the meaning of the policy. In addition, we affirm the October 30, 2020, order that denied Korte's motion to compel discovery.

¶ 32    Affirmed.