In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 16-3928

WEST SIDE SALVAGE, INC.,

*Plaintiff-Appellant,*

*v.*

RSUI INDEMNITY COMPANY,

*Defendant-Appellee.*

---

Appeal from the United States District Court for the
Southern District of Illinois.
No. 15-cv-0442-MJR-SCW — **Michael J. Reagan**, *Chief Judge.*

---

ARGUED NOVEMBER 1, 2017 — DECIDED DECEMBER 18, 2017

---

Before MANION, KANNE, and ROVNER, *Circuit Judges.*

KANNE, *Circuit Judge.* In 2014, we held that West Side Salvage, Inc. was solely liable for the injuries that three workers suffered in a grain-bin explosion. We also held that West Side was liable for $3 million in property damage to the bin, which was owned by ConAgra Foods, Inc.

West Side had an $11 million excess insurance policy with RSUI Indemnity Company. West Side sued RSUI, alleging that

RSUI breached its duty to settle ConAgra's property-damage claim. The district court granted summary judgment to RSUI. West Side appeals. We affirm.

## I. BACKGROUND

In 2010, ConAgra discovered a hot grain bin—a bin with rising grain temperatures that poses a risk of fire and explosion—at its Chester, Illinois facility. It hired West Side to fix the problem, but the grain bin exploded while West Side was working on it. The explosion caused severe burns and injuries to three workers and damaged the bin. The injured workers sued West Side and ConAgra, and ConAgra filed a cross-claim against West Side for property damage to the bin.

West Side had a $1 million primary insurance policy with Colony Insurance and an $11 million excess insurance policy with RSUI. At the outset of the explosion litigation, Colony tendered its limits and removed itself from the case. But a Colony-hired attorney continued to represent West Side through trial after West Side received reservation letters from RSUI. The letters reflected RSUI's position that ConAgra's property-damage claim against West Side may potentially fall outside of coverage. Relevant to this appeal, West Side's policy with RSUI includes a damage-to-property clause, which excludes certain property-damage claims from coverage.

The parties tried but never reached a settlement in the explosion litigation. After a jury trial, West Side and ConAgra were found liable for the workers' injuries, and West Side was found liable for the property damage to ConAgra's grain bin.

Both West Side and ConAgra appealed, and in *Jentz v. ConAgra Foods, Inc.*, 767 F.3d 688 (7th Cir. 2014), we reversed the personal-injury judgment as to ConAgra and held that

West Side was solely liable for the workers' injuries. We af-
firmed the judgment against West Side on ConAgra's prop-
erty-damage claim. This left West Side with significantly
greater liability than what its insurance policies covered.

Before we decided *Jentz*, West Side filed a complaint in dis-
trict court, arguing that RSUI should have settled the explo-
sion-litigation claims within policy limits and breached its
duty to settle in not doing so. The district court dismissed that
action without prejudice. After we decided *Jentz*, West Side
and RSUI privately settled West Side's claim that RSUI should
have settled the injured workers' claims within policy limits.
But that settlement did not address the property-damage
claim. Instead, West Side filed the action from which this ap-
peal was taken, alleging that RSUI breached its duty to settle
the property-damage claim within policy limits.

RSUI moved for summary judgment, advancing two argu-
ments. It principally argued that the insurance policy doesn't
cover the property-damage claim, in part because there is a
damage-to-property exclusion in the policy that applies. It ar-
gued in the alternative, though, that even if the claim is cov-
ered by the insurance policy, West Side could not present ev-
idence that RSUI breached its duty to settle. The district court
rejected the first argument but accepted the second. The court
reasoned that an insurer only has a duty to settle when there
is an offer to settle all claims against the insured at the same
time that there is a reasonable likelihood the insured will face
liability exceeding the policy limits. The court found that West
Side did not show there was a time when these conditions
were satisfied, and it granted summary judgment to RSUI.
West Side appeals.

## II. ANALYSIS

We review a district court's grant of summary judgment *de novo*, construing the facts and making reasonable inferences in favor of the nonmovant, here, West Side. *See Perez v. Thorntons, Inc.*, 731 F.3d 699, 703 (7th Cir. 2013). We may affirm "on any ground supported in the record, so long as that ground was adequately addressed in the district court and the nonmoving party had an opportunity to contest the issue." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005).

In this court, RSUI repeats the two arguments it made in its motion for summary judgment as alternative bases for affirmance: that the insurance policy doesn't cover ConAgra's property-damage claim and that, even if there is coverage, West Side can't show RSUI breached its duty to settle.

In support of its first argument, RSUI contends that the damage-to-property clause in the policy excludes ConAgra's claim against West Side from coverage. We agree.

We interpret the damage-to-property exclusion in accordance with the law of the forum state, Illinois. Under Illinois law, the damage-to-property clause excludes ConAgra's claim against West Side from coverage. And RSUI had no duty to settle a claim that the insurance policy doesn't cover. *See Am. Family Mut. Ins. Co. v. Westfield Ins. Co.*, 962 N.E.2d 993, 1000 (Ill. App. Ct. 2011).

### A. *Illinois law applies to the analysis of the damage-to-property exclusion.*

As a federal court sitting in diversity, we turn to state law to determine whether an insurance coverage exclusion applies. *See, e.g.*, *Neth. Ins. Co. v. Phusion Projects, Inc.*, 737 F.3d 1174, 1177 (7th Cir. 2013); *Cincinnati Ins. Co. v. Flanders Elec.*

*Motor Serv., Inc.*, 40 F.3d 146, 150 (7th Cir. 1994). But the parties dispute which state law we should apply, so we turn first to a choice-of-law analysis using the rules of the forum state, here, Illinois. *Klaxon v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).

Illinois courts engage in a choice-of-law analysis only if there is a conflict between Illinois law and the law of another state such that "a difference in law will make a difference in the outcome." *Townsend v. Sears, Roebuck & Co.*, 879 N.E.2d 893, 898 (Ill. 2007). The party who seeks a choice-of-law determination must establish the existence of an outcome-determinative conflict. *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014). If the party fails to establish the existence of such a conflict, the court applies the law of the forum state. *See id.*; *Gleim v. Roberts*, 919 N.E.2d 367, 370 (Ill. App. Ct. 2009).

West Side argues that a conflict exists between Illinois and Iowa law that affects whether the damage-to-property exclusion bars coverage for ConAgra's property-damage claim. In support of this contention, West Side points to *National Surety Corp. v. Westlake Investments, LLC*, 880 N.W.2d 724 (Iowa 2016). *Westlake* addressed whether an insurance policy covered a property-damage claim arising after construction work was *completed*. When a property-damage claim arises after work is completed, whether that claim is covered by the policy depends on the application of the "damage to 'your work'" exclusion. *Id.* at 739–40 (The "'your work' exclusion generally excludes from coverage property damage arising out of completed work performed by or on behalf of the insured.").

But ConAgra brought a claim for property damage caused by *ongoing operations*, not completed work. When a property-damage claim arises during ongoing operations, whether

that claim is covered by the policy depends on the application of the damage-to-property exclusion, instead. *See id.* at 739 (noting that the damage-to-property exclusion generally excludes from coverage property damage due to work incorrectly performed on it, but it generally does not apply if the property damage arises out of completed work). Thus, *Westlake* is not outcome-determinative in this case.

In the absence of a demonstrated conflict, we apply the law of the forum state (Illinois) to determine whether the damage-to-property exclusion applies to ConAgra's property-damage claim against West Side.

B.  *The damage-to-property provision excludes ConAgra's claim against West Side from coverage.*

Though a court must construe exclusions liberally in favor of the insured and against the insurer, "if an exclusion is clear and unambiguous and does not contravene public policy, it must be applied as written." *Pekin Ins. Co. v. Willett*, 704 N.E.2d 923, 925 (Ill. App. Ct. 1998). West Side does not argue that the damage-to-property exclusion is ambiguous or contravenes public policy. Thus, we apply the exclusion as it is written.

The damage-to-property exclusion eliminates insurance coverage for property damage to:

> "(5) [t]hat particular part of real property on which you or any contractors or subcontractors working directly or indirectly on your behalf are performing operations, if the 'property damage' arises out of those operations; or

> (6) [t]hat particular part of any property that
> must be restored, repaired or replaced because
> 'your work' was incorrectly performed on it."

(R. 1 at 30–31.) The contract defines "property damage" as
"[p]hysical injury to tangible property," (R. 1 at 40), and it de-
fines "your work" as "[w]ork or operations performed by you
or on your behalf," (R. 1 at 41). This exclusion is "premised on
the theory that liability policies are not intended to provide
protection against the insured's own faulty workmanship or
product, which are normal risks associated with the conduct
of the insured's business." *State Farm Fire & Cas. Co. v. Tiller-*
*son*, 777 N.E.2d 986, 992 (Ill. App. Ct. 2002).

The district court read these provisions narrowly, conclud-
ing that the exclusion only applied if the insured was sued for
property damage caused by work on that particular piece of
property. To reach this conclusion, the district court did not
apply Illinois law and instead relied on *Columbia Mutual Ins.*
*Co. v. Schauf*, 967 S.W.2d 74 (Mo. 1998) (en banc). In that case,
a painter was hired to paint all interior and exterior surfaces
of a home. *Schauf*, 967 S.W.2d at 76. After the painter used a
spraying compressor to paint the kitchen cabinets, he began
cleaning the compressor inside the home before he left for the
day. *Id.* The equipment started a fire that damaged the home,
and the homeowners sued the painter for that damage. *Id.* In
a declaratory action brought by the painter's insurer, the court
held that only damage to the kitchen cabinets was excluded
from coverage because that was the only part of real property
on which the painter was performing operations. *Id.* at 80.

Applying *Schauf* to this case, the district court found that
"a reasonable interpretation of the facts could lead to the con-
clusion" that West Side was not working on the grain bin

when it exploded but instead was only handling the grain inside of it. (R. 65 at 13.) Because ConAgra sued for the damage to the bin, not for the loss of the grain, a jury could find that ConAgra's property-damage claim was still covered by the insurance policy despite the damage-to-property exclusion.

We decline to adopt the district court's interpretation and instead hold that the damage-to-property exclusion applies here. Under Illinois law, the damage-to-property exclusion is not interpreted so narrowly. "The exclusion[] do[es] not exclude coverage for damage done only to the precise area of the property being worked on. Rather, the exclusion[] appl[ies] to property damage caused by poor workmanship." *Willett*, 704 N.E.2d at 926.

In *Willett*, the homeowners hired a worker to empty their swimming pool, paint it, and fill it with water and chemicals to prepare it for use. *Id.* at 924. After the worker emptied and painted the pool, but before he filled it, the pool pushed out of the ground from a heavy rainstorm. *Id.* The homeowners filed a complaint against the worker, alleging that he failed to fill the pool in a timely manner and that this failure caused damage to the pool while he was working on it. *Id.* at 926. Willett's insurance company brought an action seeking a declaration that Willett's insurance policy did not cover the homeowner's claim against him. The court held that the policy excluded the homeowner's claim from coverage, resting its holding on the applicability of damage-to-property provisions that are identical to the ones here. *Id.*

Just as Willett's insurance policy did not cover the damage to the swimming pool because he "performed his work incorrectly by failing to fill the pool in a timely manner," West Side's insurance policy does not cover the damage to the grain

bin because West Side performed its work incorrectly by failing to reduce the grain temperature in a timely manner. *Id.* Even if it is true that West Side was only working on the grain when the explosion occurred, it is immaterial. The damage-to-property exclusion does not apply only to the precise area of the property being worked on if the work performed was poor. *See id.*

Holding otherwise would undermine the basic premise of the damage-to-property exclusion: that general liability policies are not intended to protect the insured from the normal risks of its business. *See Tillerson*, 777 N.E.2d at 992. The damage that West Side caused was one of the normal risks associated with its business of remedying hot grain bins before they explode. *See Auto-Owners Ins. Co. v. Chorak & Sons, Inc.*, No. 07 C 4454, 2008 WL 3286986, at *4 (Ill. App. Ct. 2008) (noting that the insured was asking the insurer to provide coverage for damage that was the result "of the normal risks associated with" the activity the insured was performing and holding that the damage-to-property exclusion applied to bar such coverage).

### C. Because RSUI didn't cover ConAgra's claim against West Side, RSUI had no duty to settle it.

"[The] duty to act in good faith in responding to settlement offers … only exists where there is coverage under the policy." *Am. Family Mut. Ins. Co. v. Westfield Ins. Co.*, 962 N.E.2d 993, 1000 (Ill. App. Ct. 2011). The damage-to-property exclusion removed ConAgra's claim from coverage under West Side's policy with RSUI, so RSUI had no duty to act in good faith in responding to an offer to settle that claim. West Side's three arguments that RSUI should nonetheless be held accountable for failing to settle the claim are unavailing.

West Side first contends that there is an applicable exception to the damage-to-property exclusion. In support, it points to an exception to an entirely different exclusion—the "your work" exclusion. The exceptions to the *damage-to-property* exclusion do not apply. (*See* R. 1 at 30–31.)

Next, West Side argues that "RSUI is estopped from asserting lack of coverage as a defense," because "RSUI took over [the defense] and insisted on handling the settlement discussions." (Appellant's Reply Br. at 10–11.) But if "an underlying complaint presents an issue of potential insurance coverage, and the insurer believes that the policy does not cover the claim, the insurer may not refuse to defend the insured, but must either defend the suit under a reservation of rights or seek a declaration of no coverage." *See Mobil Oil Corp. v. Md. Cas. Co.*, 681 N.E.2d 552, 560 (Ill. App. Ct. 1997). In this case, RSUI sent West Side reservation letters before it began to defend the suit. (Appellant's Reply Br. at 10.)

Additionally, West Side was represented through trial by independent counsel hired by its primary insurance carrier, not RSUI. (R. 59 at 3.) *See Home Ins. Co. v. Three I Truck Line, Inc.*, 95 F. Supp. 2d 901, 905–06 (N.D. Ill. 2000) (after recognizing that a reservation of rights may not insulate a defense of non-coverage if the insurer prejudices the insured during the defense of the action, noting that an insured should acquire its own counsel to avoid the insurer "subvert[ing] the insured's ability to protect its own interests"); *see also Twin City Fire Ins. Co. v. Country Mut. Ins. Co.*, 23 F.3d 1175, 1179 (7th Cir. 1994) (noting that Illinois's duty to settle is an "implied correlative" of the insurer's control over the defense). Because RSUI took sufficient steps to ensure that it would not prejudice West Side's defense even though RSUI was involved in it,

RSUI is not estopped from asserting a defense of non-coverage.

Finally, West Side argues that RSUI is liable for ConAgra's $3 million judgment against West Side—"even if ConAgra's property damage claim was uncovered"—because the judgment was a consequential damage arising from RSUI's bad faith failure to settle the injured workers' claims. (Appellant's Reply Br. at 12.) But West Side cannot recover any damages, including consequential damages, for a claim that it did not even bring: West Side and RSUI privately settled West Side's claim that RSUI failed to settle the injured worker's claims. (Appellant's Br. at 27.) West Side's argument that it is now entitled to consequential damages from that claim is without merit.

## III. CONCLUSION

We may affirm summary judgment on any basis supported by the record, so long as the ground was adequately addressed below. RSUI advanced two arguments for why it was entitled to summary judgment on West Side's claim that it breached its duty to settle ConAgra's property-damage claim: that the insurance policy does not cover the claim and, in the alternative, that West Side can't prove that RSUI breached its duty to settle even if the policy covers the claim. Summary judgment was appropriate on the first ground, so we need not reach the merits of the second.

AFFIRMED.