In the

# United States Court of Appeals

## For the Seventh Circuit

No. 17-2564

QUINN R. HEATH,

*Plaintiff-Appellant,*

*v.*

INDIANAPOLIS FIRE DEPARTMENT,

*Defendant-Appellee.*

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-425-JMS-MJD — **Jane E. Magnus-Stinson**, *Chief Judge.*

ARGUED FEBRUARY 21, 2018 — DECIDED MAY 9, 2018

Before RIPPLE, KANNE, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* In January 2015, Quinn Heath applied to become an Indianapolis firefighter. Over the next four months, he passed the Indianapolis Fire Department's written examination, oral interview, and Certified Physical Agility Test. Quinn's performance during the application process led to his placement on a ranked list for hiring consideration. The Department hired two academy classes in 2015 from that ranked list, but Quinn was not selected for either class.

Meanwhile, Quinn's father—Rodney Heath—filed a *qui tam* suit under the False Claims Act against the Indianapolis Fire Department, alleging that the Department had made false statements of material fact to the federal government in order to receive federal grant funds. At the time, Rodney was a backup investigator in the Department's arson unit. The same day that Quinn found out he had not been selected for the second academy class, the Department's Deputy Chief told several Department employees they needed to be interviewed by the U.S. Department of Homeland Security in connection with Rodney's suit.

Thereafter, Quinn joined his father's suit, alleging that the Department retaliated against him for his father's complaint, in violation of the False Claims Act. Quinn's retaliation claim alleges that he was not hired as an Indianapolis firefighter because of his father's suit.

The district court granted summary judgment to the Indianapolis Fire Department on Quinn's retaliation claim. Quinn now appeals that decision.

We review the district court's grant of summary judgment *de novo*, viewing the record in the light most favorable to Quinn. *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087 (7th Cir. 2018). We may affirm summary judgment on any ground supported by the record as long as the issue was adequately raised below and the nonmoving party had an opportunity to contest it. *See West Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 222 (7th Cir. 2017). For the reasons that follow, we affirm.

### I.  ANALYSIS

The False Claims Act protects whistleblowers from retaliation, providing that "[a]ny employee … shall be entitled to all relief necessary to make that employee … whole, if that employee … is discharged, demoted, suspended, threatened, harassed, or … discriminated against in the terms and condition of employment because of lawful acts done by the employee … or associated others" in furtherance of a False Claims Act action. 31 U.S.C. § 3730(h)(1) (2010); *see also* § 3730(h)(2) (describing relief under (h)(1)).

The district court's dismissal of Quinn's claim turned on its conclusion that the False Claims Act's anti-retaliation provisions do not cover job applicants or prospective employees. This court has not yet addressed that issue, and we decline to do so now. Even assuming that § 3730(h)'s definition of "employee" is broad enough to encompass job applicants or prospective employees, the Indianapolis Fire Department would still be entitled to summary judgment. Section 3730(h)(1) requires that Quinn show he was retaliated against *because of* his father's protected activity, and he cannot do so.

Recent authority raises a question about what causation standard Quinn must meet to show that he was retaliated against *because of* his father's protected activity. In *Fanslow v. Chicago Manufacturing Center, Inc.*, relying in part on Title VII principles, we noted that False Claims Act complainants can establish that they were retaliated against because of protected activity by demonstrating that the retaliation was motivated "at least in part" by the protected activity. 384 F.3d 469, 485 (7th Cir. 2004). Nearly ten years post-*Fanslow*, the Supreme Court held that Title VII retaliation claims require

but-for causation, rather than the lesser mixed-motive stand-
ard of causation we described in *Fanslow*. *Univ. of Tex. Sw. Med.
Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). We have not yet revis-
ited *Fanslow* to extend *Nassar's* Title VII holding to
§ 3730(h)(1), though the similarity of the two provisions
might give us reason to do so in a future case. *See United States
ex rel. King v. Solvay Pharm., Inc.*, 871 F.3d 318, 333 (5th Cir.
2017) (noting that the False Claims Act requires but-for cau-
sation). But the causation standard makes no difference here.
Under any standard, there is no evidence—even when con-
struing the facts in Quinn's favor—from which a jury could
conclude that the Department did not hire Quinn because of
his father's *qui tam* suit.

Applicants to the Indianapolis Fire Department are placed
on a ranked hiring list according to their scores on various
merit-based metrics. Under a local ordinance governing the
Department's hiring, eighty percent of an academy class is to
be filled in rank order, starting with the top candidate on the
list. Then, the fire chief can exercise his discretion to fill the
remaining twenty percent of the class. The Department has
also established selection criteria that guide the fire chief's dis-
cretionary picks, preferencing applicants with two or more of
the following "markers": "racial minority, female gender, col-
lege degree, fire training or experience, and legacy" (meaning
a family member is a current or former member of the Depart-
ment). (Appellant's Br. at 3.) Applicants receive the college de-
gree marker only if they earned a degree; they do not receive
the marker if they have simply accumulated college credit
without earning a degree.

To survive summary judgment, Quinn needed to demonstrate either (1) that he should have been an automatic selection for an academy class and he was not, or (2) that the chief exhausted two-marker applicants for discretionary selections and still did not select Quinn. Only then could a reasonable trier of fact have any evidence from which to conclude that Rodney's *qui tam* suit motivated, at least in part, the Department's decision not to hire Quinn.

At best, Quinn was ranked 64th on the hiring list. (Appellant's Br. at 5, 30 (citing R. 84-4).) And he had one marker—legacy—because of his father's employment at the Department. Though Quinn had 66 hours of college credit, he never earned a degree, and thus did not receive that marker. Quinn did not receive an automatic or discretionary selection to either of the two academy classes chosen in 2015.

The fire chief selected 30 applicants from the list for the first academy class. The first 24 were hired in rank order. At 64th, Quinn did not receive an automatic selection. Then, 6 spots remained for the chief's discretionary picks. All 6 spots were filled by applicants with two or more markers, and 3 of those spots were filled by applicants ranking ahead of Quinn.

Given that 27 applicants ranked ahead of Quinn were selected for the first class, Quinn's ranking improved to, at best, 37th for the second class.

The chief planned to fill the second academy class with 40 applicants from the list. The chief filled the first 29 spots in the class in rank order. He then filled the remaining 11 spots with discretionary selections, all of which had two or more markers. More than 10 two-marker applicants still remained on the list who were not selected for an academy class. It appears an

automatic selection withdrew from the hiring process after the selections were finalized, and the chief did not replace her, leaving the second academy class at 39 recruits.

If the chief was following the Department's 80/20 rule based on a 40-recruit class, he should have picked 32 applicants as automatic selections. But even if the chief had picked 32 automatic selections, Quinn would not have been an automatic selection ranked at 37th. And selecting 8, rather than 11, discretionary picks would have similarly had no impact on Quinn's chances, particularly because a large pool of two-marker applicants still remained after the chief filled both academy classes.

In sum, Quinn was ranked, at best, five spots too low to receive an automatic selection to an academy class. And every discretionary pick in both classes had more markers than Quinn, consistent with the Department's policy for discretionary selections. Thus, there is no evidence from which a reasonable jury could conclude that Rodney's suit was even a motivating factor in the decision not to hire Quinn.

## II. CONCLUSION

Quinn's retaliation claim against the Indianapolis Fire Department raises a complicated question about the scope of the False Claims Act's anti-retaliation provisions. We need not resolve that question in this case, however. Even assuming that the meaning of "employee" under § 3730(h) is broad enough to encompass job applicants or prospective employees, there are no facts from which a jury could conclude that Quinn was retaliated against because of his father's *qui tam* suit.

The district court's judgment in favor of the Indianapolis Fire Department on Quinn's retaliation claim is AFFIRMED.