In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 18-2653

BOARD OF FORENSIC DOCUMENT EXAMINERS, INC., *et al.*,

*Plaintiffs-Appellants*,

*v.*

AMERICAN BAR ASSOCIATION, *et al.*,

*Defendants-Appellees.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:17-cv-1130 — **Edmond E. Chang**, *Judge*.

_____

ARGUED APRIL 8, 2019 — DECIDED MAY 1, 2019

_____

Before WOOD, *Chief Judge*, SCUDDER and ST. EVE, *Circuit Judges*.

SCUDDER, *Circuit Judge*. The Board of Forensic Document Examiners brought a defamation action alleging reputational harm from an article published in an American Bar Association law journal. The district court dismissed the action, concluding that the article did not sufficiently identify the Board or any of its members as the subjects of criticism and, even if it had, expressed nothing more than the author's opinion.

Because we agree that the statements are non-actionable, constitutionally protected expressions of opinion, we affirm.

**I**

The Board of Forensic Document Examiners is a non-profit organization that administers a certification program for forensic document examiners. Certified examiners analyze and compare handwriting and provide expert testimony in judicial proceedings. The Board has certified about a dozen examiners, including each of the individual plaintiffs.

This dispute centers on an article by Thomas Vastrick, a forensic document examiner certified by a different, much larger organization: the American Board of Forensic Document Examiners, which we will call the American Board. Vastrick's article, *Forensic Handwriting Comparison Examination in the Courtroom*, appeared in *The Judges' Journal*, a peer-reviewed scholarly journal published by the ABA. The summer 2015 edition of the journal in which Vastrick's article was published focused on topics in forensic science encountered by judges when qualifying expert witnesses. Vastrick's article spanned four pages and offered guidance for judges in evaluating the qualifications and credentials of handwriting experts. Vastrick urged judges to look for experts certified by the American Board and warned judges to "be wary of other certifying bodies." The article also included Vastrick's photo and a brief biography, which identified Vastrick as a "board certified forensic document examiner out of Orlando, Florida, with over 37 years of experience," including service as chairman of the "Questioned Documents Section of the American Academy of Forensic Sciences" and participation in a handwriting study funded by the National Institute of Justice.

While the article did not mention the Board of Forensic Document Examiners by name, the Board believed that Vastrick nonetheless defamed its members by making false and misleading statements about how to distinguish between "true professionals" and "lesser qualified" examiners. The Board initially responded by submitting a rebuttal to Vastrick's article, but frustrated with the ABA's suggested edits, it abandoned the effort and instead filed this action. The Board's complaint asserted claims of defamation *per se* and invasion of privacy on behalf of all of its members generally and member Andrew Sulner specifically on the basis that he was singled out by Vastrick. The Board also asserted claims of civil conspiracy, false advertising under the Lanham Act, and violations of state competition laws.

The Board amended its complaint and focused on four specific statements in Vastrick's article:

> "An appropriately trained forensic document examiner will have completed a full-time, in-residence training program lasting a minimum of 24 months per the professional published standard for training. Judges need to be vigilant of this issue. There are large numbers of practitioners who do not meet the training standard."

> "The American Board of Forensic Document Examiners … is the only certification board recognized by the broader forensic science community, law enforcement, and courts for maintaining principles and training requirements concurrent with the published training standards. Be wary of other certifying bodies."

> The article cautioned judges "to look out for" examiners "[c]ertified by [a] board other than the American Board of Forensic Document Examiners."

> The article also cautioned against any "[m]ember of American Academy of Forensic Sciences but not the Questioned Document Section."

The Board alleged that these statements misled readers about the qualifications of Board-certified examiners. As to the first statement, the Board asserted that Vastrick falsely suggested that to satisfy "the professional standards for training," a forensic document examiner must complete a 24-month "full-time, in-residence training program," whereas the professional standards require only the equivalent of a 24-month full-time training program. The Board also alleged that the second and third statements, which identified the American Board of Forensic Document Examiners as the only reputable certifying body, falsely implied that its members were unqualified, even though, like the American Board, the Board is accredited by the Forensic Specialties Accreditation Board. As to the fourth statement, the Board contended that Vastrick harmed Andrew Sulner's reputation by warning judges about forensic examiners who are members of the American Academy of Forensic Sciences generally but not the American Academy's Questioned Document Section specifically, as Sulner apparently is the only examiner who fits this description.

The ABA and other defendants moved to dismiss the complaint, arguing that the challenged statements did not identify the Board (or any of its members) as the target of

criticism and, regardless, reflected only Vastrick's opinion, not verifiable facts. The district court agreed and dismissed each of the Board's claims. The court also denied the Board's motion for reconsideration and request to file a second amended complaint, concluding that any amendment would be futile in light of the ruling that the article contained only non-actionable opinion.

## II

On appeal the Board challenges the district court's decision to grant the defendants' motion to dismiss and, separately, to deny leave to file a second amended complaint. The Board also argues that the court erred by applying Illinois law to each claim (except for the claim specific to plaintiff Andrew Sulner, to which the district court properly applied New York law). We review a dismissal for failure to state a claim *de novo, Santana v. Cook County Bd. of Review*, 679 F.3d 614, 620 (7th Cir. 2012), and a denial of leave to amend for abuse of discretion, *Dubicz v. Commonwealth Edison Co.*, 377 F.3d 787, 792 (7th Cir. 2004).

## A

Beginning with the choice of law issue, we turn to the law of the forum state, Illinois. See *West Side Salvage, Inc. v. RSUI Indemnity Co.*, 878 F.3d 219, 223 (7th Cir. 2017). Illinois law tells us that the law of the state with the "most significant relationship to the occurrence and the parties" applies in the event of a conflict. *Barbara's Sales, Inc. v. Intel Corp.*, 227 Ill. 2d 45, 61 (2007). In defamation cases, the plaintiff's home state often has the "most significant relationship" because that location is where the plaintiff suffers the most reputa-

tional harm. See *Kamelgard v. Macura*, 585 F.3d 334, 341 (7th Cir. 2009).

Each individual plaintiff lives in a different state, and the district court agreed with the Board that, in the event of a conflict of laws, the law of the affected plaintiff's home state would apply to the claim in question. From there, however, the district court identified only one conflict with Illinois law: for the defamation *per se* claim brought by Andrew Sulner, New York law (unlike Illinois) permits a plaintiff to rely on extrinsic evidence to establish that he is the target of a challenged statement. Compare *Bryson v. News America Publications, Inc.*, 174 Ill. 2d 77, 118–19 (1996) (explaining that statements are not defamatory *per se* if "additional facts are required to show the identity of the allegedly defamed person") with *Hinsdale v. Orange County Publications, Inc.*, 17 N.Y.2d 284, 290 (1966) (holding that extrinsic facts may be considered in determining whether a written statement is libelous *per se* if the extrinsic facts are "presumably known to [the] readers" of the challenged statement). As a result, the district court applied New York law to Sulner's claim, but seeing no other conflicts, applied Illinois law to the Board's remaining claims.

The Board now argues that the district court should have applied the law of each plaintiff's home state in assessing their defamation claims. We disagree. A district court is required to engage in a choice of law analysis only "if there is a conflict between Illinois law and the law of another state such that 'a difference in law will make a difference in the outcome.'" *West Side Salvage,* 878 F.3d at 223 (citing *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 155 (2007)). And it was incumbent on the Board, as the party seeking a choice of law

determination, to "establish the existence of an outcome-determinative conflict." *Id.* It failed to do so. While the Board, in its response to the ABA's motion to dismiss, "reserve[d] [the] right to argue the application of the laws of a particular state should a conflict of laws arise with respect to certain issues," the Board did not identify any specific conflict in the laws of the pertinent states. So the district court committed no error in applying the law of the forum state, Illinois, to each of the Board's claims. See *id.* ("If the party fails to establish the existence of [] a conflict, the court applies the law of the forum state.").

B

That brings us to the merits of the Board's claims. To state a claim for defamation under Illinois law, a plaintiff must allege that "the defendant made a false statement about the plaintiff, that the defendant made an unprivileged publication of that statement to a third party, and that [the] publication caused damages." *Green v. Rogers*, 234 Ill. 2d 478, 491 (2009). If a statement's "defamatory character is obvious and apparent on its face," it is considered defamation *per se*, with the law then presuming damages. *Tuite v. Corbitt*, 224 Ill. 2d 490, 501 (2006). Illinois recognizes five categories of statements that are considered defamatory *per se*, two of which are relevant here—statements "imputing an inability to perform or want of integrity in the discharge of duties of office or employment" and statements that "prejudice a party, or impute lack of ability, in his or her trade." *Van Horne v. Muller*, 185 Ill. 2d 299, 307 (1998).

The Board contends that the four statements highlighted in its amended complaint are defamatory *per se* because they falsely imply that its experts do not meet the published pro-

fessional training standards for forensic examiners. But not all statements that doubt or impugn an individual's professional abilities are actionable. To the contrary, opinions that do not misstate facts are protected not only by Illinois law but also by the First Amendment, and that is so even when the opinions concern one of the five defamation *per se* categories under Illinois law. See *Huon v. Denton*, 841 F.3d 733, 743 (7th Cir. 2016).

In determining whether a statement is one of opinion or one of fact, Illinois law—in keeping with Supreme Court precedent—draws no firm dividing line. See *Solaia Tech., LLC v. Specialty Publishing Co.*, 221 Ill. 2d 558, 581 (2006) (citing Illinois cases and *Milkovich v. Lorain Journal Co.*, 497 U.S. 1, 18–19 (1990)). Courts consider "whether the statement has a precise and readily understood meaning; whether the statement is verifiable; and whether the statement's literary or social context signals that it has factual content." *Id.*; see also *Gross v. New York Times Co.*, 82 N.Y.2d 146, 153 (1993) (articulating similar factors). Context is key, as it matters not only what was said, but who said it, where it was said, and the broader setting of the challenged statements. See, *e.g.*, *Brennan v. Kadner*, 351 Ill. App. 3d 963, 969–70 (2004) (employing similar factors).

The context of Vastrick's statements supports the district court's conclusion that his article expressed his opinion, not verifiable facts. The article appeared in a scholarly law journal—the ABA's *The Judges' Journal*—and even more specifically in an edition devoted (as the front cover stated) to *Forensic Sciences—Judges as Gatekeepers*. Anyone reading this edition of *The Judges' Journal* would know that the primary audience was judges, with Vastrick's article

reflecting but one practicing expert's view on how judges should attend to their gatekeeping obligations under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) or state-law analogues. Nobody reading the article in this context could reasonably have seen Vastrick's statements as assertions of fact subject to falsification. To the contrary, the article was what it purported to be: one practitioner's commentary on how judges should attend to the admission of expert opinion in the area of handwriting analysis. See, *e.g.*, *Lott v. Levitt*, 556 F.3d 564, 570 (7th Cir. 2009) (explaining that in the scholarship context "it is natural to read [the allegedly defamatory] statement as a critique on [the plaintiff's] theory, rather than an accusation of falsifying data"); *Dilworth v. Dudley*, 75 F.3d 307, 310 (7th Cir. 1996) (considering statements in a "work of scholarship" and stating that "judges are not well equipped to resolve academic controversies" and the appropriate remedy is "the publication of a rebuttal").

This interpretation is particularly reasonable as *The Judges' Journal* warned readers that "[a]rticles represent the opinions of the authors alone" and "provide opposing views" for readers to consider. Vastrick likewise highlighted the subjective nature of his article, presenting his views as suggestions and not facts: "I, as a practicing forensic document examiner, would like to respectfully suggest ways to differentiate between the true professional and the lesser-qualified practitioners." To be sure, neither the ABA nor Vastrick could avoid liability simply by labeling the challenged statements as opinions. See *Milkovich*, 497 U.S. at 19. But these warnings are relevant to our assessment of the broader context of Vastrick's statements and to our

conclusion that the article could not reasonably be interpreted as stating facts. See *Solaia*, 221 Ill. 2d at 581.

A closer look at the content of Vastrick's statements reinforces our conclusion. In the first challenged statement, for example, Vastrick discussed the qualifications of "an appropriately trained forensic document examiner." This express qualification—"appropriately trained"—signaled that Vastrick was offering his own view on adequate qualifications for a forensic examiner, not describing factual, objective standards for qualifications. Vastrick's assertion that the American Board "is the only certification board recognized by the broader forensic science community, law enforcement, and courts," likewise reflects the expression of a viewpoint, as the statement is so broad as to lack objective, verifiable meaning. See *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1227 (7th Cir. 1993) ("[I]f it is plain that the speaker is expressing a subjective view, an interpretation, a theory, conjecture, or surmise, rather than claiming to be in possession of objectively verifiable facts, the statement is not actionable.").

While we agree with the district court that the better course would have been for Vastrick to disclose (somewhere in the article) his affiliation with the American Board— thereby allowing readers to see that he was showering praise on an organization to which he belonged—none of his statements were defamatory. Indeed, though the Board may disagree with Vastrick's assessment of who is properly qualified and what credentials district judges should look for when considering proffered experts, the appropriate avenue for expressing a contrary point of view was through a re-

buttal article, not a defamation lawsuit. See, *e.g.*, *Lott*, 556 F.3d at 570–71.

Because we conclude Vastrick's article contained only non-actionable opinion, we need not consider other aspects of the district court's reasoning that informed the dismissal of the Board's claims.

## III

The Board also challenges the district court's dismissal of its Lanham Act claims. But here too the opinion-based nature of Vastrick's statements is dispositive.

To establish a deceptive advertising claim under § 1125(a)(1) of the Lanham Act, a plaintiff must show that "(1) the defendant made a material false statement of fact in a commercial advertisement; (2) the false statement actually deceived or had the tendency to deceive a substantial segment of its audience; and (3) the plaintiff has been or is likely to be injured as a result of the false statement." *Eli Lilly & Co. v. Arla Foods, Inc.*, 893 F.3d 375, 381–82 (7th Cir. 2018). As with Illinois defamation law, opinions are non-actionable under the Lanham Act because the statute prohibits only misrepresentations "of fact." 15 U.S.C. § 1125(a)(1). Because Vastrick's article reflected only his opinion, none of the challenged statements can form the basis of a Lanham Act claim.

## IV

Finally, the Board argues that the district court abused its discretion in failing to grant leave to amend its complaint. The district court offered two reasons for this denial: delay and futility. Because we agree that each of the challenged statements reflects Vastrick's opinion—and there was nothing the Board could do to change that reality in a new

amended complaint—the district court acted within its discretion in denying the Board's request for leave to file a second amended complaint. See *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Ind.*, 786 F.3d 510, 520 (7th Cir. 2015) (explaining that leave may be denied when it is "clear that the defect cannot be corrected so that amendment is futile").

For these reasons, we AFFIRM.