[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 18-14484

_____

D.C. Docket No. 6:14-cv-00094-LGW-GRS

JAMIE NESBITT,

Plaintiff-Appellant,

versus

CANDLER COUNTY, GEORGIA,
d.b.a.
Candler County Ambulance Service,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia

_____

(January 3, 2020)

Before ED CARNES, Chief Judge, BRANCH, and TJOFLAT, Circuit Judges.

ED CARNES, Chief Judge:

This case turns on what Congress meant when it said "because of" in the antiretaliation provision of the False Claims Act, 31 U.S.C. § 3730(h)(1). When we interpret the text of a statute, "we must presume that Congress said what it meant and meant what it said." United States v. Steele, 147 F.3d 1316, 1318 (11th Cir. 1998) (en banc); accord, e.g., Conn. Nat'l Bank v. Germain, 503 U.S. 249, 253–54 (1992); In re Thompson, 939 F.3d 1279, 1285 (11th Cir. 2019). Because of our obligation to presume that "because of" means "because of" and not something else, we affirm the judgment of the district court.

I.

The plaintiff, Jamie Nesbitt, started working as an emergency medical technician for Candler County's ambulance service in 2006. Several years later one of his coworkers, Donald Greer, was promoted to be the new deputy director of the ambulance service. That was when Nesbitt's problems began.

Nesbitt grew concerned about how Greer was instructing him and other staff members to fill out certain paperwork. Part of his job as an EMT was to complete a "trip report" after each ambulance ride to document the condition of the patient and the medical necessity of the ambulance service. Medicare relies on those reports when deciding whether to pay for the service. The narrative section of a trip report is especially important for billing purposes.

2

According to Nesbitt, when Greer became the deputy director he started pressuring the EMTs to write in their report narratives that patients were unable to walk, even if they could. That way Medicare would pay for more trips. Nesbitt believed that Greer was asking him to commit fraud, so he began complaining to Greer himself and other County officials.

After Nesbitt started complaining, Greer changed his schedule. Ordinarily the County EMTs worked two 24-hour shifts per week and were on call for two additional 24-hour days. The on-call days gave the EMTs a chance to pick up more overtime hours. Greer started putting Nesbitt on call for only the first half of a day instead of for the full 24 hours, which meant less overtime pay.

With Greer's approval, Nesbitt began working another job at a private ambulance company called Meddixx. The County had a policy prohibiting EMTs from working side jobs without the approval of the ambulance service director. Greer was not the director, David Moore was. Nesbitt assumed that Moore somehow knew about his other job, but there's no evidence that Moore did know about it, much less that he approved it.

The County fired Nesbitt in 2014. The five-member Board of Commissioners had the sole authority to hire and fire County employees. Usually when an employee was fired, the County Administrator or a department head would make the termination recommendation to an individual Board member, who

3

would present the recommendation to the full Board.  The Board would then discuss the recommendation and vote on it.

Greer and Moore started the process to terminate Nesbitt.  They met with the County Administrator, William Lindsey, and told him that they wanted to fire Nesbitt because he would not follow orders and had violated the County's policy on side jobs.  The Board voted to terminate Nesbitt's employment, and after that, Moore and Greer called him into Greer's office and told him that he no longer worked for the County.  They gave him a letter stating that he had been fired for two reasons: his unauthorized job with Meddixx and his refusal to fill out trip reports in "the proper way."  Doc. 57-6.

## II.

In August 2014 Nesbitt filed suit under the False Claims Act, 31 U.S.C. §§ 3729–3731, and the Georgia False Medicaid Claims Act, Ga. Code Ann. §§ 49-4-168–168.6, alleging that the County had engaged in a fraudulent scheme related to billing for ambulance services and had fired him in retaliation for his whistleblowing.  In June 2016 the United States intervened and reached a settlement with the County and Nesbitt.  As part of the settlement, Nesbitt and the government voluntarily dismissed the fraud claims, but Nesbitt's False Claims Act retaliation claim moved forward.  In granting summary judgment for the County on that claim, the district court concluded that although Nesbitt had engaged in

4

"protected conduct" he had not created a genuine issue of material fact that he had been fired because of that conduct. This is Nesbitt's appeal.

## III.

We review <u>de novo</u> the district court's grant of summary judgment, considering all of the evidence in the light most favorable to the nonmoving party. <u>See</u> <u>Hamilton v. Southland Christian Sch., Inc.</u>, 680 F.3d 1316, 1318 (11th Cir. 2012). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 249 (1986).

## IV.

The result in this case, as we have said, depends on the standard of causation that applies to retaliation claims under the False Claims Act. Nesbitt conceded at oral argument that if a but-for standard instead of a motivating factor standard applies, he loses.

A party can be held to concessions and admissions its counsel made at oral argument. <u>Crowe v. Coleman</u>, 113 F.3d 1536, 1542 (11th Cir. 1997). But there is a difference between concessions about the law and those about how the law

5

applies and the result it produces given the facts of a specific case. Contrast Roberts v. Galen of Va., Inc., 525 U.S. 249, 253 (1999) ("[T]he concession of a point on appeal by respondent is by no means dispositive of a legal issue . . . ."); U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 448 (1993) ("[T]he Court of Appeals acted without any impropriety in refusing to accept what in effect was a stipulation on a question of law."); Bourdon v. U.S. Dep't of Homeland Sec. (DHS), 940 F.3d 537, 547 n.6 (11th Cir. 2019) ("[T]he Government cannot concede away the proper interpretation of a statute . . . ."); and United States v. Lee, 586 F.3d 859, 866 (11th Cir. 2009) (refusing to accept the government's concession as to the interpretation of a statutory term); with I.L. v. Alabama, 739 F.3d 1273, 1284 (11th Cir. 2014) ("The district court and the plaintiffs alike were entitled to rely on Alabama's factual concession that taxes would rise if the court enjoined enforcement of Amendment 373 and to believe, given that concession, that no further evidence on the issue was needed."); Rozar v. Mullis, 85 F.3d 556, 565 (11th Cir. 1996) (accepting a party's concession that there was no evidence that the defendants had violated the Fourteenth Amendment); and United States v. Gerber, 994 F.2d 1556, 1558 (11th Cir. 1993) (accepting a defendant's concession that certain evidence was wrongly suppressed under the Fourth Amendment).

6

Nesbitt has conceded nothing about the proper causation standard, only that given the facts he will lose if the but-for standard applies. We accept his concession about the result of applying that standard to the facts of this case. Nesbitt loses under the but-for standard because it requires him to do what he cannot, which is to "show that the harm would not have occurred in the absence of[,] that is, but for" his protected conduct. Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338, 346–47 (2013) (quotation marks and dash omitted). To avoid losing, Nesbitt argues for application of the motivating factor standard. That more plaintiff-friendly standard requires only a showing that the protected conduct "was a motivating factor for any employment [decision], even though other factors also motivated the [decision]." See id. at 349 (quoting 42 U.S.C. § 2000e-2(m)). The result of this case depends on the choice between the but-for and the motivating factor causation standards.

That choice was made by Congress when it worded the relevant statutory provision:

> Any employee shall be entitled to all relief necessary to make that employee whole, if that employee is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee in furtherance of an action under this section or other efforts to stop [one] or more violations of this subchapter.

7

31 U.S.C. § 3730(h)(1) (emphasis added) (references to contractors, agents, and associated others omitted).

"In construing a statute we must begin, and often should end as well, with the language of the statute itself." Steele, 147 F.3d at 1318 (quotation marks omitted). Here the crucial language is the phrase "because of." The work needed to interpret that phrase has been done for us in a pair of Supreme Court decisions. See Univ. of Tex. Sw. Med. Ctr. v. Nassar, 570 U.S. 338 (2013); Gross v. FBL Fin. Servs., Inc., 557 U.S. 167 (2009). They involved interpretation of nearly identical language in two other job discrimination statutes.

In Gross the Court decided the standard of causation for discrimination claims brought under the Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621–634. See 557 U.S. at 173. The relevant part of that statute provides: "It shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a) (emphasis added). The Supreme Court observed that the phrase "because of," as it is commonly used, means "by reason of: on account of." Gross, 557 U.S. at 176 (quotation marks omitted). That means, the Court held, age must be the but-for cause of the employer's adverse decision: age must have had "a determinative influence on the

8

outcome" of the employer's decision-making process. Id. (quotation marks and emphasis omitted).

Four years later came the Nassar decision. See 570 U.S. 338. It involved the antiretaliation provision of Title VII, which provides:

> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a) (emphasis added). The question was what standard of causation applied under that provision. Nassar, 570 U.S. at 346. The Court began with two premises. First, Congress legislates against the background of traditional tort law. See id. at 347. Unless something in the statute says otherwise, we presume that Congress meant to incorporate familiar tort principles into federal tort statutes. See id. And it is "textbook tort law that an action is not regarded as a cause of an event if the particular event would have occurred without it." Id. (quotation marks omitted). Second, the Court acknowledged the importance of its Gross decision to the question at issue. See id. at 343, 349–51. Gross provided insight into the proper interpretation of "because" based on the plain meaning of the word. See id. at 350–51.

The Supreme Court focused on the statute's text. See id. at 352. It observed that there is no "meaningful textual difference between" the antiretaliation

9

provision in Title VII and the antidiscrimination provision in the ADEA.  Id.  It follows, the Court held, that "Title VII retaliation claims require proof that the desire to retaliate was the but-for cause of the challenged employment action."  Id. The Court also rejected a number of "counterargument[s]" based on Congress' 1991 amendments to Title VII, the Equal Employment Opportunity Commission's interpretation of the statute, and the Court's Title VII antidiscrimination precedent. See id. at 352–63.

Our reading of Gross and Nassar convinces us that the but-for causation standard applies to claims under the antiretaliation provision of the False Claims Act just as it does to the antiretaliation provision of Title VII and the antidiscrimination provision of the ADEA.  The key "because of" and "because" language is identical or materially identical in all three statutes.  See Nassar 570 U.S. at 352 (noting that there is a "lack of any meaningful textual difference between" the "because" language in Title VII and the "because of" language in the ADEA).  The analytical result must be identical as well given our duty, as an "inferior court[]," to follow Supreme Court decisions.  See U.S. Const. Art. III, § 1.

Those of our sister circuits that have taken Gross and Nassar into account have concluded, as we do, that the but-for causation standard applies to False Claims Act retaliation claims.  See DiFiore v. CSL Behring, LLC, 879 F.3d 71,

10

76–78 (3d Cir. 2018); United States ex rel. King v. Solvay Pharm., Inc., 871 F.3d 318, 333 (5th Cir. 2017).  They reasoned, as we have reasoned, that we must interpret the phrase "because of" in the False Claims Act the same way the Supreme Court has interpreted materially identical language in similar statutes. See DiFiore, 879 F.3d at 76–78; King, 871 F.3d at 333.

Some of our sister circuits that have not taken Gross and Nassar into account have reached a different result, concluding that the motivating factor standard of causation is the proper one to apply under the antiretaliation provision of the False Claims Act.  See Singletary v. Howard Univ., 939 F.3d 287, 293 (D.C. Cir. 2019); United States ex rel. Ziebell v. Fox Valley Workforce Dev. Bd., Inc., 806 F.3d 946, 953 (7th Cir. 2015); McKenzie v. BellSouth Telecomms., Inc., 219 F.3d 508, 518 (6th Cir. 2000).  A review of those decisions shows the error of their ways.

Instead of considering the plain meaning of the statute's text, the Sixth Circuit in McKenzie jumped to the legislative history of the antiretaliation provision of the False Claims Act.  See 219 F.3d at 518.  The court cited a Senate report stating that to establish a retaliation claim, the "employee must show that 'the retaliation was motivated at least in part by the employee's engaging in protected activity.'"  Id. (quoting S. Rep. No. 99-345, at 35 (1986), as reprinted in 1986 U.S.C.C.A.N. 5266, 5300).  That Senate report is all the Sixth Circuit considered.  See id.  The McKenzie decision predated Gross and Nassar, and the

11

Sixth Circuit has not revisited the question in a published opinion since those two Supreme Court decisions were issued.

More than a decade before the Supreme Court decided Gross and Nassar, the D.C. Circuit adopted a motivating factor causation standard for False Claims Act retaliation claims.  See United States ex rel. Yesudian v. Howard University, 153 F.3d 731, 736 (D.C. Cir. 1998).  Like the Sixth Circuit in McKenzie, the D.C. Circuit in Yesudian made the mistake of ignoring the plain meaning of the phrase "because of" and looking solely to the Senate report as if it were the law.  See id. The D.C. Circuit has reiterated that mistake once after Gross but before Nassar, see United States ex rel. Schweizer v. Oce N.V., 677 F.3d 1228, 1238, 1240 (D.C. Cir. 2012), and once more for good measure after Nassar, see Singletary, 939 F.3d at 293, 303.  In its Schweizer decision, the D.C. Circuit did not mention the Gross decision and did not consider whether to apply a but-for causation standard.  See Schweizer, 677 F.3d at 1238–40.  Instead, without question or comment it simply followed Yesudian as its circuit precedent.  See id. at 1238, 1240 (citing Yesudian, 153 F.3d at 736).  It did the same thing again in Singletary.  See 939 F.3d at 293, 303.

In Brandon v. Anesthesia & Pain Management Associates, Ltd., 277 F.3d 936 (7th Cir. 2002), which was decided before either Gross or Nassar, the Seventh Circuit stated in dicta that a motivating factor standard applies to False Claims Act

12

retaliation claims.  See id. at 944.  Brandon borrowed that standard from the D.C. Circuit's Yesudian decision without any independent analysis of the statute's text. See id.  Later, in Fanslow v. Chicago Manufacturing Center, Inc., 384 F.3d 469 (7th Cir. 2004), the court applied the motivating factor standard to a False Claims Act retaliation claim in reliance on Brandon, again without any analysis of the statute's text.  See id. at 485.

After Gross and Nassar the Seventh Circuit decided Ziebell, 806 F.3d 946, in which it applied the motivating factor standard to a False Claims Act retaliation claim because of Fanslow and found that the plaintiff had failed to meet that standard.  See id. at 953.  The court did not consider whether Gross and Nassar had overruled Fanslow or might militate in favor of a but-for standard.  See id. Although later decisions from the Seventh Circuit have suggested that Ziebell took the wrong approach, none has explicitly overruled it.[1]  In one of those decisions, United States ex rel. Marshall v. Woodward, Inc., 812 F.3d 556 (7th Cir. 2015), the court actually applied a but-for standard to a False Claims Act retaliation claim without analyzing the statute or any precedent.  See id. at 564.  It did so because the parties agreed that standard applied.  See id.  The court then concluded that the

---

[1] In the Seventh Circuit, an opinion that would overrule a prior published decision cannot be published "unless it is first circulated among the active members of th[e] court and a majority of them do not vote to rehear en banc the issue."  7th Cir. R. 40(e); see, e.g., Chapman v. First Index, Inc., 796 F.3d 783, 787 (7th Cir. 2015).

13

plaintiffs failed to meet the but-for standard.  See id. at 564–65.  And after that, in Heath v. Indianapolis Fire Department, 889 F.3d 872 (7th Cir. 2018), the court acknowledged in dicta that Gross and Nassar might merit revisiting Fanslow and the motivating factor standard in the context of False Claims Act retaliation claims. See id. at 874.  But nothing came of it because the plaintiff's claim failed under any causation standard.  See id.  So as far as we can tell, the motivating factor standard articulated in Fanslow and Ziebell remains the law of the Seventh Circuit.[2]

In sum, in the circuits that still apply a motivating factor standard of causation to False Claims Act retaliation claims it can be traced back to a textual focus on legislative history or to following out-of-circuit law that relied on legislative history.  See McKenzie, 219 F.3d at 518; Yesudian, 153 F.3d at 736; see also Brandon, 277 F.3d at 944 (citing Yesudian, 153 F.3d at 736).  Nesbitt invites us to rely on legislative history too.

---

[2] In its Norbeck decision, the Eighth Circuit appeared to adopt a motivating factor causation standard for False Claims Act retaliation claims.  See Norbeck v. Basin Elec. Power Coop., 215 F.3d 848, 850–52 (8th Cir. 2000).  Later Eighth Circuit decisions, however, clarify that to prove causation the plaintiff must establish that the employer's decision was "motivated solely" by his protected conduct.  See, e.g., United States ex rel. Strubbe v. Crawford Cty. Mem. Hosp., 915 F.3d 1158, 1167 (8th Cir. 2019); Wilkins v. St. Louis Hous. Auth., 314 F.3d 927, 933 (8th Cir. 2002).  To the extent that Norbeck did adopt a motivating factor standard it is flawed for the same reason some of the other decisions we have discussed are flawed: it relies on legislative history instead of the text of the False Claims Act.  See 215 F.3d at 850–51.  And like some other circuits, the Eighth Circuit has never reconsidered its causation standard in light of Gross and Nassar.

But we should not, cannot, and do not use legislative history to get around the plain meaning of a statute's text.  See Ratzlaf v. United States, 510 U.S. 135, 147–48 (1994) ("[W]e do not resort to legislative history to cloud a statutory text that is clear.").  "When the import of the words Congress has used is clear, as it is here, we need not resort to legislative history, and we certainly should not do so to undermine the plain meaning of the statutory language."  Harris v. Garner, 216 F.3d 970, 976 (11th Cir. 2000) (en banc).  To paraphrase Justice Jackson, it is better to analyze a statute than it is to psychoanalyze Congress; resorting to legislative history is less interpreting statutory language than recreating it.[3]  The Supreme Court interpreted the key statutory language on which this case turns, and we follow its decisions.  We don't presume to psychoanalyze Congress, just as the Supreme Court didn't.

**AFFIRMED.**

---

[3] United States v. Pub. Util. Comm'n, 345 U.S. 295, 319 (1953) (Jackson, J., concurring) ("I should concur in this result more readily if the Court could reach it by analysis of the statute instead of by psychoanalysis of Congress.  When we decide from legislative history . . . we must put ourselves in the place of a majority of Congressmen and act according to the impression we think this history should have made on them.  Never having been a Congressman, I am handicapped in that weird endeavor.  That process seems to me not interpretation of a statute but creation of a statute.").

15